DAVID WRIGHT, APPELLANT, *v.* JAMES SHANAHAN, AS SUPERINTENDENT OF PUBLIC WORKS OF THE STATE OF NEW YORK, AND JAMES SHANAHAN, RESPONDENT.

*Public administrative officer — a party damaged by the officer's failure to exercise his discretion is entitled to relief in equity — duty of the Superintendent of Public Works to remove flush-boards from a dam.*

In an action brought to restrain the defendant, the Superintendent of Public Works of the State of New York, as a public officer and individually, from keeping flush-boards continually upon the top of a dam, across the outlet of Owasco lake,

by reason of which plaintiff's lands were overflowed, it appeared that the legislature, in 1857 and in 1868, appropriated the dam to the use of the State, with the right to control and store the waters of the lake for canal purposes, and that, in 1868, the canal division engineer recommended the use of flush-boards to store waters, the same to be taken off when not needed for such purpose. The canal board adopted this recommendation and used such boards, but not continuously.

The defendant assumed office in February, 1884. During his term the boards were never removed from the dam, although there was no difficulty in doing so. In the fall, winter and spring, and in times of freshet, they were unnecessary for storage purposes, and at such times caused the waters of the lake to rise and damaged the lands of plaintiff, who made many complaints to the defendant during the years 1885, 1886, 1887 and 1888, but secured no redress from the defendant, or from his subordinate, to whom he was referred.

*Held*, that the plaintiff was entitled to relief.

That the defendant was an administrative officer and his duties were ministerial.

That, in the absence of any proof that he had exercised discretion in the matter, or given it any attention, a court of equity would interfere to direct his action,

That it was his duty to remove the flush-boards when the interests of the canals did not require their use, and to exercise his discretion in that regard.

*It seems*, that the plaintiff was entitled to a mandatory injunction directing the defendant to cause the flush-boards to be raised from time to time so as to allow the water to flow over the dam during such periods as the said boards were not required to be in place in order to store water for canal purposes.

APPEAL by the plaintiff David Wright from a judgment, entered in the office of the county clerk of Cayuga county on the 26th day of September, 1890, dismissing his complaint, with costs, after a trial before a referee.

*H. P. Howland*, for the appellant.

*John W. Hogan*, attorney-general, for the respondent.

LEWIS, J. :

This action was commenced in January, 1889, to restrain the defendant, as a public officer and individually, from using, keeping up, permitting or suffering to be used or kept up continuously, flush-boards upon the top of the upper dam across the outlet of Owasco lake, causing the water of the lake to set back overflowing the lands of the plaintiff. Other claims for relief were stated in the complaint. The action was referred.

The following facts were found by the referee : That the plaintiff was the owner and in possession of the farm described in the complaint situated upon the inlet of Owasco lake; that the lands were partly cleared and were productive and valuable for agricultural purposes; that Owasco lake was a natural body of water, having an inlet and an outlet; that many years prior to 1857 a dam was constructed across the outlet, forming a reservoir from which water was taken for the use of the Auburn Hydraulic Association and also for the use of the State's Prison at Auburn; that under and by virtue of acts of the legislature passed in the years 1857 and 1868, the State appropriated the dam to its own use with the right to control and store the waters of the lake for canal purposes; that in the year 1868 the canal division engineer recommended the use of flush-gates upon the dam for the purpose of storing the water for canal purposes, the flush-gates to be taken off from the dam when not needed for storing water and to be replaced when needed for that purpose. The Canal Board adopted the recommendations of the engineer, and the Canal Commissioners and their agents kept and maintained upon the crest of the dam flush-boards of the width of eighteen inches until the year 1874, or thereabouts, and thereafter flush-boards of the width of two feet were put on and used until the year 1884; these boards were not kept up continuously, but were removed in times of freshet or high water to permit the waters of the lake to settle even with the height of the flush-boards above the crest of the dam; the defendant was duly appointed Superintendent of Public Works and entered upon the discharge of the duties of the office on the 1st day of February, 1884, and continued therein until after the commencement of this suit; during that period the defendant did not remove said flush-boards from said dam, but they were kept upon the crest of the dam continuously by the direction or with the consent of the defendant in times of freshet or high water as well as at other periods of the year; that whenever such flush-boards were removed, prior to 1884, the waters of the lake were not caused to rise by means of the dam so as to flow back upon the plaintiff's lands or to saturate them to such an extent as to make them unfit for cultivation, but the keeping up of the flush-boards continuously had the effect, in each year in periods of freshet and high water, to raise the water of the lake and

inlet so that the plaintiff's lands were thereby submerged and satu-- rated to such an extent as to greatly injure them for agricultural purposes.

He found, as conclusions of law, that, at all times after the acts of 1857 and 1868, the Canal Commissioners had authority to raise the height of the water above the dam by the use of flush-boards, upon the crest of the dam or otherwise, of such width as they should pre- scribe from time to time, and to keep them up continuously if, in the exercise of their discretion, they should think it necessary or advisable to do so, subject to the right of the owners of the lands injured thereby to compensation from the State; that the authority possessed by the Canal Commissioners became vested in the defend- ant as Superintendent of Public Works, and that in keeping up said flush-boards continuously the defendant acted officially as the agent of the State; and that the plaintiff had established no cause of action, legal or equitable, against the defendant, either in his offi-- cial or individual character; and that his claim for damages, if any, was against the State, and not against the defendant, and dismissed the complaint, with costs.

These facts, thus found by the learned referee, are all sustained by the evidence, with the exception of his finding that the flush- boards were kept upon the crest of the dam continuously by the direction or with the consent of the defendant. If, by that finding, it is meant that the defendant, at any time, took the matter of keeping the flush-boards on the dam, or removing them, into con- sideration and exercised his discretion upon the question, I do not think the finding sustained by the evidence, for I am unable to find any evidence or facts warranting such finding. There is an entire absence of any evidence tending to show that the defendant ever reflected upon or exercised any discretion in the premises. The evi- dence shows that from first to last he ignored the matter and refused to give the slightest attention to it. His attention was called to the question of the flush-boards by the letter from the plaintiff dated June 5, 1885. He was informed that the plaintiff was suffering damages by their being kept upon the dam during high water. He failing to pay any attention to the communication, another letter was addressed to him upon the subject in October of the same year. In answer to the last letter, he writes:

"*October* 23, 1885.

"D. Wright, Esq., *Auburn, N. Y.:*

"Dear Sir.— Both of your letters, one of June 5th and the other of October 6th, were received and placed on file.

"Yours, very truly,

"JAMES SHANAHAN,

"*Superintendent of Public Works.*"

A resolution was adopted by the Senate of the State in April, 1886, requiring him to report to the Senate whether or not he claimed, and, if so, by what authority, the right or power to cause flush-boards to be placed upon the upper dam of the Owasco outlet in Cayuga county, and to what height, and for what purpose; and whether or not he had directed such flush-boards to be placed on the said dam, and to what height; and whether or not he had appointed or caused to be appointed any person to place or keep or have the management of flush-boards upon said dam, if so, who and the date of such appointment. He replied to the interrogatories as follows: "I have not appointed or caused to be appointed any person to place or keep or have the management of flush-boards upon the upper dam of the Owasco outlet in Cayuga county, nor have I directed flush-boards to be placed on said dam. Under chapter 262 Laws of 1817, I claim authority to put on flush-boards on said dam in case of emergency, but have not exercised the right during my term of office."

After the receipt of another letter from the plaintiff, calling his attention to the matter again, he wrote plaintiff that he had referred his letter to his assistant superintendent, John Stebbins, of Syracuse, and directed that all further communications upon the subject be sent to him. After the receipt of three other letters written by the plaintiff upon this subject, he again writes: "Matter upon which you touched in your letter yesterday is in the hands of Assistant Superintendent Stebbins, and I would prefer that you send your communications on this subject to him." The plaintiff testified that he called upon Mr. Stebbins upon the subject, and he refused to consider the question, and, in effect, directed the plaintiff to leave his office.

Five other letters addressed to the defendant by the plaintiff upon

the subject during the years 1886, 1887 and 1888, elicited no reply. The defendant failed to attend the trial of the action, or pay any personal attention to the matter. He has not vouchsafed even to say that other matters had so engrossed his attention that he had not the time to consider the question. He knew, if he read the plaintiff's letters, that it was a matter of large pecuniary importance to the plaintiff and others occupying lands adjacent to the inlet to the lake.

He refused to pay any attention to the plaintiff's complaints. The law of 1817, to which he referred in his answer to the resolutions of the Senate, gave to the Canal Commissioners power to take possession of and use any lands or waters in the State necessary for the construction and use of the canal, " but doing, nevertheless, no unnecessary damage." If the case furnished any evidence that he had exercised his discretion and determined that the interests of the canal required that the flush-boards should remain upon the dam continuously, a different question might be presented, although it would be difficult to convince a court that he had in good faith reached any such conclusion It must be apparent to anyone who gives the subject any reflection that the flush-boards in the fall, winter and spring were not necessary for any great length of time to store the water in the lake for use in the dry season of the year. The evidence shows conclusively that they were not needed except in the dry season when the canals were in use. Keeping them on the dam during the winter and rainy seasons caused the plaintiff's land to be submerged and saturated with water the greater part of the year, and it was thereby rendered unfit for agricultural purposes. The flush-boards were so constructed that their removal and replacement were the work of a short time and inexpensive. There can be no doubt that it was the duty of the defendant, as Superintendent of the Public Works to cause the flush-boards to be removed from the dam when not necessary for storing water. The referee correctly decided that the defendant was not bound by the action of his predecessors as to the manner of using the flush-boards or as to their height. He, as representative of the State, had control of the dam. He had authority to determine what flush-boards should be used and when they should be placed on the dam for the purpose of the canal.

Section 3 of article 5 of the Constitution provides that the Governor shall appoint a Superintendent of Public Works, who shall be

charged with the execution of all the laws relating to the repair and navigation of the canals of the State, and also of those relating to the construction and improvement of the canals, except so far as the execution of the laws relating to such construction or improvement is confided to the State Engineer and Surveyor, subject to the control of the legislature. It also provides that he shall make the rules and regulations for the navigation and use of the canals. He is required to give security for the faithful discharge of his duties as such officer. He is an administrative officer. (1 R. S. [7th ed.], 340.) His duties are ministerial, not judicial. In the discharge of the important and responsible duties of his office he is frequently called upon to exercise discretion, and when he honestly and fairly exercises such discretion his conduct is not subject to the control or direction of the courts. The courts have, however, frequently assumed jurisdiction over the acts of ministerial officers. They have been restrained by injunction from proceeding in violation of the law to the injury of individual rights. They may be set in motion in the discharge of their duties by the courts if they neglect and refuse to perform the duties of their office. They are amenable to the jurisdiction of the courts of equity in the administration of their trusts at the suit of an individual having a special interest in the execution of the trust. (*The People of the State of New York* v. *The Canal Board of New York*, 55 N. Y., 393; *Adsit* v. *Brady*, 4 Hill, 630.) Judge BRONSON, speaking for the court in *Adsit* v. *Brady*, says: "When an individual sustains an injury by the misfeasance or non-feasance of a public officer, who acts or omits to act contrary to his duty, the law gives redress to the injured party by an action adapted to the nature of the case. This principle is so well settled that it is only necessary to inquire whether there be anything in this case to take it out of the operation of the general rule."

In this case one of the superintendents of repairs on the canals was sued for damages sustained in consequence of his neglect to keep his section in repair.

While this case has been somewhat criticised and limited by later cases, the general doctrine enunciated by Judge BRONSON, above quoted, has not been disturbed.

Judge RAPALLO says, in *McCarthy* v. *The City of Syracuse*

(46 N. Y., 196): "The principle appears to be settled in this State that where a duty of a ministerial character is imposed by law upon a public officer or corporation, a negligent omission to perform that duty creates a liability on the part of such officer or corporation for the damages which individuals may sustain by reason of such omission, and that such liability may be enforced in a civil action by the party injured." (See *Robinson* v. *Chamberlain*, 34 N. Y., 389.)

It was the duty of the defendant, as Superintendent of Public Works, to cause the flush-boards upon this dam to be removed when, in his opinion, the interests of the canal did not require their use. It was his duty to exercise his discretion upon that subject. The property of citizens was being injured by the neglect to remove the boards. He persistently refused to take the matter into consideration and perform his duty in that regard. It is suggested that the plaintiff's remedy was the presentation of his claim for damages from time to time, to the Court of Claims.

Such a course would involve a multiplicity of actions and involve the plaintiff, and also the State, in great expense in trying the cases. A moment's consideration and action by the defendant would have avoided and saved all such trouble and expense. If he had devoted a portion of the time that he was occupied in answering letters and inquiries propounded to him to the consideration of the question, the whole difficulty would have been removed. I think it was within the power of the court to give the plaintiff relief, and while the principal claims in his complaint against the defendant were properly refused; he was, I think, entitled to a mandatory injunction directing the defendant to cause the flush-boards to be from time to time raised so as to allow the water to flow over the dam unobstructed during such times as, in his judgment, they were not needed thereon for the purpose of storing water for the use of the canals. Instead of the plaintiff obtaining this relief his complaint was dismissed and a judgment entered against him for $457.75 costs.

Justice demands that the judgment should be reversed and a new trial granted, with costs to abide the event.

Dwight, P. J., and Macomber, J., concurred.

Judgment appealed from reversed and a new trial ordered, costs to abide the event.