THE PEOPLE OF THE STATE OF NEW YORK ex rel. CHARLES HOFFMAN, Appellant, *v.* CHARLES A. RUPP and Others, Constituting the Board of Police of the City of Buffalo, New York, Respondents.

> 90  145
> 9ap254
> 90  143
> 19ap572
> 90  145
> 35ap269
> 90h 145
> 63ad247

*Mandamus — available only to enforce a specific legal right — the proper remedy for the removal of a de facto officer is by quo warranto.*

It is not the province of a writ of mandamus to establish rights or to determine controversies; it is available only for the enforcement of a clear specific legal right which must be attended by an existing duty on the part of the person to whom the mandamus is directed to perform or execute it, and the absence of either defeats the remedy.

Where an office is already filled by an actual incumbent exercising the functions of such office, even when he is merely an officer *de facto* under color of right, a mandamus is not the proper remedy to compel the admission of another claimant to the office.

In a proceeding instituted by mandamus, under chapter 716 of the Laws of 1894, which provides that "in every public department * * * of the State of New York and of the cities * * * thereof, and also in non-competitive examinations under the civil service rules, laws or regulations of the same wherever they apply, honorably discharged Union soldiers and sailors shall be preferred for appointment and employment * * * provided they possess the business capacity necessary to discharge the duties of the position involved,"

by a relator who was an honorably discharged soldier of the United States in the late war, to compel the board of police of the city of Buffalo to appoint him to the position of an assistant sealer of weights and measures of the city of Buffalo, it appeared that the relator applied to said board for appointment to such office ; that he was competent to perform the duties of the office ; that he was the only honorably discharged soldier who applied for the position, and that the police board did not appoint the relator, but did appoint two other persons who duly qualified and were incumbents of the office.

*Held,* that the relator's proper remedy to review such appointments was by quo warranto and not by mandamus.

WARD, J., dissenting.

APPEAL by the relator, Charles Hoffman, from a judgment of the Supreme Court in favor of the respondents, entered in the office of the clerk of the county of Erie on the 21st day of May, 1895, upon the decision of the court rendered after a trial at the Erie Special Term dismissing the proceeding upon the merits.

*Geo. W. Cothran,* for the appellant.

*Frank C. Laughlin,* for the respondents.

BRADLEY, J.:

This proceeding was instituted by an alternative writ of mandamus commanding the defendants to appoint the relator to the office of assistant sealer of weights and measures of the city of Buffalo or show cause to the contrary.

The writ was founded upon the fact that the relator had served in the army of the United States in the late war, and was honorably discharged therefrom ; that he had made application to such board of police for appointment to that office, and was entitled to preference pursuant to the statute which provides that, " In every public department &ast; &ast; &ast; of the State of New York and of the cities, &ast; &ast; &ast; thereof, and also in non-competitive examinations under the civil service rules, laws or regulations of the same wherever they apply, honorably discharged Union soldiers and sailors shall be preferred for appointment and employment; age, loss of limb or other physical impairment, which does not in fact incapacitate, shall not be deemed to disqualify them, provided they possess the business capacity necessary to discharge the duties of the position involved." (Laws 1894, chap. 716.)

The statute also further provides that " the civil service rules and

laws of this State shall not apply to such persons, residents of this State, who served in the army or navy of the United States in the late war, and have been honorably discharged therefrom, for any position or employment, the compensation of which does not exceed four dollars a day, in the public departments, and upon all public works of the State of New York and of the several cities, counties, towns and villages thereof." (Laws 1894, chap. 717.)

The defendants made return to the writ and the issues were tried and the court found as facts that the office of assistant scaler of weights and measures is a public office of the city of Buffalo, with an annual salary attached thereto of $1,000, and with a definite term of one year; that on the 12th day of December, 1894, there were two vacancies in such office, and that the filling of them by appointment devolved upon the defendants, constituting such board of police; that the relator was a volunteer soldier in the army of the United States in the late war, and was honorably discharged therefrom; that he applied to the board for appointment to such office, and in his application set forth his military service and honorable discharge; that he was competent to perform the duties of the office, and was the only honorably discharged soldier who applied for appointment to either of those vacancies; that the board of police did not appoint the relator, but did appoint two other persons who duly qualified and were incumbents of the office; that neither of them was an honorably discharged soldier; that each of them had qualifications for the performance of the duties of the office superior to those of the relator, and that such superior fitness was the inducement for their selection by the board in preference to the appointment of the relator.

And, as conclusion of law, the court determined that the writ of mandamus was not the proper remedy and dismissed the proceeding.

The only question requiring consideration on this review is whether the remedy adopted by the relator was available for the purpose of the relief sought by him.

The purpose of the statute is to give preference to honorably discharged soldiers in making appointments to the offices within the classes there referred to, and such is the duty devolved upon the appointing power, not, however, excluding from consideration the question of competency and fitness for the positions.

Assuming that the relator was entitled to preference as against either of those so appointed by the defendants, he has no title to the office. That is not given by the preference, but is dependent upon appointment by the constituted authorities, without which, no person can legally become an incumbent of the office. It is in that view that the relator seeks to enforce his appointment by the defendants. They have exercised their power in that respect, and the persons appointed are in the offices. But it is insisted that one of them was unlawfully placed there by reason of such preference to which the relator was entitled, and that the defendants having made the appointment in violation of law cannot assert it in denial of his right to the preference. The fact remains that there is no vacancy to fill. The offices are occupied by those having apparent authority derived from appointment by the board having the power to make it. The appointment of the relator would not displace either of the present incumbents. It is not the province of a writ of mandamus to establish rights or to determine controversies. It is available only for the enforcement of a clear, specific legal right, and there must also be an existing duty of the respondents to perform or execute it. The absence of either defeats the remedy. The proceeding by mandamus in some sense has the nature of an action between the parties, and is for the enforcement of a right in favor of the person in whose behalf the writ is granted. The duty of the respondents, without the corresponding right upon his part, would furnish no support for granting it. (*People ex rel. Bailey* v. *Supervisors*, 12 Barb. 217.) The claim of the relator upon which the proceeding is founded is that he is entitled to the office. The question of his appointment involves the consideration of the right to the office, and unless the latter is clear the writ of mandamus is not the appropriate remedy to enforce the former. It cannot be assumed that the right to the office does not present a disputed question which would have to be determined upon conflicting claims between the relator and one of the present incumbents. The determination of the right in such case is not within the purpose of a proceeding by mandamus, but the question may properly arise and be disposed of in an action which now in this State takes the place of what was formerly known as an information in the nature of quo warranto. (Code Civ. Proc. §§ 1948, 1983.)

In such case the proceeding or action is instituted by the Attorney-General in the name of the People, and the relief sought is not dependent upon the right of the relator. The burden, in the first instance, is with the defendant to show that he has the legal title to the office, and the fact that he is ousted for want of such title or right to the possession of it, does not necessarily establish the title of the relator to it. (*People ex rel. Judson* v. *Thacher*, 55 N. Y. 525.)

The proposition is well settled that where an office is already filled by an actual incumbent exercising the functions of it, even when he is merely an officer *de facto* under color of right, mandamus is not available to compel the admission of another claimant to the office. (*People ex rel. Arcularius* v. *Corporation of New York*, 3 Johns. Cas. 79 ; *People ex rel. Wren* v. *Goetting*, 133 N. Y. 569.)

It is first to be determined in an appropriate action in the nature of quo warranto whether one of the persons appointed by the defendants to the office in question is unlawfully in possession of it, and if the result is judgment of ouster, a vacancy is furnished.

Then it may be the duty of the board of police to fill it, and in that event, if any one person is entitled to the appointment, he may, if necessary, proceed to obtain it by means of the mandatory writ.

Those questions, however, do not arise here for consideration.

The conclusion of the trial court, that the writ of mandamus was not the proper remedy, is well supported by the opinion of Justice SPRING, before whom the trial was had.

The judgment should be affirmed.

LEWIS and DAVY, JJ., concurred.

WARD, J. (dissenting):

It became the duty of the respondent, the Board of Police of the City of Buffalo, to appoint two assistant sealers of weights and measures for said city. The salary of an assistant is $1,000 a year. The duties of such officers are to test all scales and measures used for the sale or weighing of commodities within the city, and to collect fees therefor, and to report all violations of the ordinances on the subject to the law department of the city for prosecution. While said vacancies existed in these offices the relator, Charles Hoffman, a resident of said city, presented a written application to the police board

for a position as assistant scaler, stating that he was fifty-one years of age, a resident of the city, by occupation a grocer, and that he had served in the War of the Rebellion from August 26, 1864, until the close of the war, for which service he held an honorable discharge; that he made his application under chapter 717 of the Laws of the State of New York, 1894. The board of police considered this application with others, took proof upon the subject and as to the duties of these officers, and the proof discloses that the application of the relator was true in fact, and no substantial objection appeared as to his competency and ability to discharge the duties of the office.

On the 12th of December, 1894, the respondents appointed Adolph Karl and Charles Hennafelt assistant sealers to fill said vacancies, and refused to appoint the relator, and on the thirty-first of December this court, upon the petition of the relator, granted an alternative writ of mandamus requiring the board to appoint the relator to the office of assistant sealer, or show cause to the contrary at a special term of the court on the 21st of January, 1895.

The board made return to this writ, and the court at Special Term made findings of fact establishing such vacancies in the office of assistant sealer; the appointment of the persons named above, and proceeds as follows: "That the relator, Charles Hoffman, was a volunteer soldier in the army of the United States of America in the war for the suppression of the Rebellion, and was honorably discharged therefrom. That said relator applied for appointment to the office of assistant sealer, and his application, setting forth his military service and honorable discharge therefrom, was duly presented to said board of police. That said relator was competent to fill the duties of said office of assistant sealer, and he was the only honorably discharged soldier who applied for either of such vacancies.

"That said appointees, Adolph Karl and Charles Hennafelt, each possessed qualifications for the fulfillment of the duties of such office superior to those possessed by said relator, and each was better fitted to discharge the duties thereof than said relator, and such superior fitness was the impelling motive and inducement for their selection by said defending board in preference to the appointment of relator."

The court found as a conclusion of law that the alternative writ

of mandamus was not the proper remedy to test the disputed right of relator ; he, therefore, dismissed the proceedings, and judgment was entered accordingly, and the exception to this conclusion brings the matter before us.

The learned judge at Special Term has favored us with an opinion which indicates that in dismissing the writ he relied upon *People ex rel. Wren* v. *Goetting* (133 N. Y. 569), and cases there cited, which seemed to hold that the proper remedy in testing the right to an office was an action in the nature of quo warranto. In the case cited the relator had been appointed clerk of the Police Court in the third judicial district of Brooklyn, and, after serving some years, was in 1889 removed. The clerk was an honorably discharged soldier, and complained that he had been removed without cause, and sued out a writ of mandamus to be reinstated ; the trial court rightly held that the provision of law under which the clerk claimed the preference as a soldier did not apply to a clerkship in a Police Court in Brooklyn, and dismissed the writ. The clerk appealed to the Court of Appeals, and that court disposed of the case upon the ground that the mandamus would not lie. That decision was made in April, 1892.

An important change in the law governing this case was made in 1894, two years after the decision referred to. That decision was made under chapter 354 of the Laws of 1883, as amended by chapter 410 of the Laws of 1884, and chapter 312 of the Laws of 1884, as amended by chapter 464 of the Laws of 1887.

By those acts, in every public department of the State and of the cities, towns and villages, and in non-competitive examinations under the civil service laws, honorably discharged soldiers and sailors should be preferred for appointment and employment.

And the statute of 1884 (§ 4) premises this preference to the soldier with the statement that it is done " In grateful recognition of the services, sacrifices and sufferings of persons who served in the army or navy of the United States in the late war, and have been honorably discharged therefrom."

No remedy for any violation of this right of the soldier is given by either of the acts in force in 1892, but by chapter 716 of the Laws of 1894, which took effect May nineteenth of that year, the Legislature amended chapter 312 of the Laws of 1884, as amended

by chapter 464 of the Laws of 1887, as follows: "Sec. 1. In every public department and upon all public works of the State of New York, and of the cities, towns and villages thereof, and also in non-competitive examinations under the civil service rules, laws or regulations of the same, wherever they apply, honorably discharged Union soldiers and sailors shall be preferred for appointment and employment; age, loss of limb or other physical impairment which does not, in fact, incapacitate, *shall not be deemed to disqualify them, provided they possess the business capacity* necessary to discharge the duties of the position involved. * * * And in case of such * * * refusal to allow the preference provided for in this act of and for any such honorably discharged Union soldier or sailor, or marine, for partisan, political, personal or other cause, except incompetency and conduct inconsistent with the position so held, such soldier, sailor or marine so wrongfully * * * refused such preference shall have a right of action in any court of competent jurisdiction for damages as for an act wrongfully done, *in addition to the existing right of mandamus;* the burden of proving such incompetency and inconsistent conduct, as a question of fact, shall be upon the defendant."

The clear intent of the statute last quoted was to confer upon the soldier the right to resort to the remedy by mandamus to correct immediately the wrong of refusing him the preference which the statute gave him, with the right also to proceed by the more deliberate course of action in the proper court for such damages as he had sustained by the wrongful act. While it would have been better to have said that the soldier should have the right to the remedy by mandamus instead of "in addition to the existing right," yet when we consider the purposes of the statute and the conditions under which it was enacted, the legislative intent becomes clearly indicated though awkwardly expressed.

The statement of the existing right of mandamus is equivalent to a declaration conferring such right. If this is not the true construction, the statement as to the remedy by mandamus is senseless. Effect will be given to every part of a statute, except such parts as are utterly repugnant to the other portions of the statute and to the purpose of it.

The Legislature undoubtedly had in view *The People ex rel.*

*Wren* v. *Goetting* (*supra*), and gave the soldier this remedy by mandamus to do·away with the effect of that decision, and not require him to resort to a long and expensive action of quo warranto.

The apprehension of the learned counsel for the respondents, that the appointees to the office would not have their day in court, not being parties to the mandamus proceedings by name, and, therefore, injustice might result to them, is without foundation. When these appointments were made they were in violation of law by a board charged with public duties; at least one of these appointees took his office clouded by this inherent vice, and he was liable to be deprived of it in a proper proceeding against the power appointing him. He had no vested right to the office thus coming to him through a violation of law. In disposing of the question as to the right of a soldier to the preference the police board was the only necessary party. The only remedy sought was the correction of the illegal act of the appointing power, and the board for all the purposes of that proceeding represented its appointees. Hardly a proceeding by mandamus against a public body or officer has occurred or can be conceived where the rights of persons interested are, or may not be, affected, who are not named in the proceeding. At all events the Legislature has given the soldier in the respect we are considering the right to the writ of mandamus, and the power has been constitutionally conferred, and we must administer the law as we find it.

The Legislature, in many statutes, has indicated its determination to give the veterans of the late war preference to appointive offices, and that has become the settled policy of this State. A struggle has been going on in the courts in consequence of the desire to make partisan appointments, and the result has been to a great extent to nullify or evade the laws·upon the subject. The last statute cited indicates an unmistakable determination to enforce this preference in favor of the soldiers. It condemns their exclusion for " partisan, political, personal " or other reasons. It tenderly declares that age, loss of limb or other physical impairment *which does not incapacitate* shall not be deemed to disqualify, and it concludes with the sweeping statement that the " burden of proving such incompetency " shall be upon the defendant; so that when the scarred

and maimed veteran with his honorable discharge presents himself to the appointing power, though his hair is gray and his wrinkles deep with coming age, he is presumed to be competent for the place and must have it, and if he is refused the defendant must establish his incompetency, or its action will be overruled. There is no discretion left in the appointing power unless it can establish the incompetency; the statute is mandatory. When the statutory standard of competency is reached the preferred candidate takes the office. It is of no consequence that. others not preferred have superior qualifications. The appointing power cannot indulge in speculations as to comparative merit above that standard. If they are allowed to do this, it will be easy to evade the statute and make partisan appointments. The court does not assume that partisan appointments were made, or intended to be made, in this particular case, but we wish to emphasize our position in this regard for the general good.

Turning to the facts in this case, we find that the respondents do not dispute the competency of this soldier to discharge the duties of this office. The court below, on the contrary, finds that he is competent, as we have seen, but that court and the respondents do say that the appointees would better discharge the duties of the office than the relator, and that is all.

By chapter 717 of the Laws of 1894 the civil service laws and rules do not apply to soldiers who apply for positions where the compensation does not exceed four dollars per day. This relieves the appellant from a civil service examination as prerequisite to an appointment.

These views lead to the conclusion that the judgment herein should be reversed and a new trial had, with costs to abide event.

Judgment affirmed, without costs.