· PEOPLE ex rel. HOFFMAN v. RUPP et al.

(Supreme Court, General Term, Fifth Department.   October 16, 1895.)

MANDAMUS—APPOINTMENT TO OFFICE—PREFERENCE OF VETERANS.

Under Laws 1894, c. 716, § 1, providing that veterans of the Civil War shall be entitled to preference of appointment to certain positions under the state and city governments, and that in all cases of refusal to allow such preference they shall have a right of action as for an act wrongfully done, "in addition to the existing right of mandamus," the appointment of a veteran to an office as to which he is entitled to preference may be compelled by mandamus, though another person has been appointed and is in possession of the office. Per Ward, J., dissenting.

Dissenting opinion.   For majority opinion, see 35 N. Y. Supp. 349.

Argued before LEWIS, BRADLEY, WARD, and DAVY, JJ.

George W. Cothran, for appellant.
Frank C. Laughlin, for appellees.

WARD, J. (dissenting).   It became the duty of the respondents, the board of police of the city of Buffalo, to appoint an assistant sealer of weights and measures for said city.   The salary of an assistant is $1,000 a year.   The duties of such officer are to test all scales and measures used for the sale or weighing of commodities within the city, and to collect fees therefor, and to report all violations of the ordinances on the subject to the law department of the city for prosecution.   While a vacancy existed in that office, the relator, Charles Hoffman, a resident of said city, presented a written application to the police board for the position of assistant sealer, stating that he was 51 years of age, a resident of the city, by occupation a grocer, and that he served in the war of the Rebellion from August 26, 1864, until the close of the war, and for which service he held an honorable discharge; that he made his application under chapter 717, Laws N. Y. 1894.   The board of police considered this application with others, took proof upon the subject and as to the duties of these officers, and the proof discloses that the application of the relator was true in fact, and no substantial objection appeared as to his competency and ability to discharge the duties of the office.   On the 12th of December, 1894, the respondents appointed Adolph Karl and Charles Hennafelt assistant sealers to fill said vacancies, and refused to appoint the relator, and on the 31st of December this court, upon the petition of the relator, granted an alternative mandamus requiring the board to appoint the relator to the office of assistant sealer, or show cause to the contrary at a special term of the court on the 21st of January, 1895.   The board made return to this writ, and the court, at special term, made findings of fact establishing such vacancies in the office of assistant sealer, the appointment of the persons named above, and proceeds as follows:

"That the relator, Charles Hoffman, was a volunteer soldier in the army of the United States of America in the war for the suppression of the Rebellion, and was honorably discharged therefrom. That said relator applied for appointment to the office of assistant sealer, and his application, setting

forth his military service and honorable discharge therefrom, was duly presented to said board of police. That said relator was competent to fill the duties of said office of assistant sealer, and he was the only honorably discharged soldier who applied for either of such vacancies. That said appointees (Karl and Hennafelt) each possessed qualifications for the fulfillment of the duties of such office superior to those possessed by said relator, and each was better fitted to discharge the duties thereof than said relator; and such superior fitness was the impelling motive and inducement for their selection by said defendant board in preference to appointment of relator."

The court found as a conclusion of law that the alternative writ of mandamus was not the proper remedy to test the disputed right of relator. He therefore dismissed the proceedings, and judgment was entered accordingly, and the exception to this conclusion brings the matter before us.

The learned judge at special term has favored us with an opinion which indicates that in dismissing the writ he relied upon People v. Goetting, 133 N. Y. 569, 30 N. E. 968, and cases there cited, which seemed to hold that the proper remedy in testing the right to an office was quo warranto. In the case cited the relator had been appointed clerk of the police court in the Third judicial district of Brooklyn, and, after serving some years, was removed in 1889. The clerk was an honorably discharged soldier, and complained that he had been removed without cause, and took a writ of mandamus to be reinstated. The trial court rightly held that the provision of law under which the clerk claimed the preference as a soldier did not apply to a clerkship in a police court in Brooklyn, and dismissed the writ. The clerk appealed to the court of appeals, and that court disposed of the case upon the ground that the mandamus would not lie. That decision was made in April, 1892. An important change in the law governing this case was made in 1894, two years after the decision referred to. That decision was made under chapter 312, Laws 1884, as amended by chapter 464, Laws 1887. By those acts, in every public department of the state and of the cities, towns, and villages, and in noncompetitive examinations under the civil service laws, honorably discharged soldiers and sailors should be preferred for appointment and employment. And the statute of 1884, § 4, premises this preference to the soldier with the statement that it is done "in grateful recognition of the services, sacrifices, and sufferings of persons who served in the army or navy of the United States in the late war, and have been honorably discharged therefrom." No remedy for any violation of this right of the soldiers is given by either of the acts in force in 1892, but by chapter 716, Laws 1894, which took effect May 19th of that year, the legislature amended chapter 312, Laws 1884, as amended by chapter 464, Laws 1887, as follows:

"Section 1. In every public department, and upon all public works of the state of New York, and of the cities, towns and villages thereof, and also in non-competitive examinations under the civil service rules, laws, or regulations of the same, wherever they apply, honorably discharged Union soldiers and sailors shall be preferred for appointment and employment; age, loss of limb or other physical impairment which does not, in fact, incapacitate, shall not be deemed to disqualify them, provided they possess the business capacity necessary to discharge the duties involved. And in all cases of such

* * * refusal to allow the preference provided for in this act of and for any honorably discharged Union soldier or sailor, or marine, for partisan, political, personal or other cause, except incompetency and conduct inconsistent with the position so held, such soldier, sailor or marine, so wrongfully * * * refused such preference shall have a right of action in any court of competent jurisdiction for the damages as for an act wrongfully done, in addition to the existing right of mandamus; the burden of proving such incompetency and inconsistent conduct, as a question of fact shall be upon the defendant."

The clear intent of the statute last quoted was to confer upon the soldier the right to resort to the remedy by mandamus to correct immediately the wrong of refusing him the office which the statute gave him, with the right also to proceed by the more deliberate course of action in the proper court for such damages as he had sustained by the wrongful act. While it would have been better to have said that the soldier should have the right to the remedy by mandamus instead of "in addition to the existing right," yet when we consider the purposes of the statute, and the condition that created it, the legislative intent becomes clearly indicated, though awkwardly expressed. The statement of the existing right of mandamus is equivalent to a declaration conferring such right. If this is not the true construction, the statement as to the remedy by mandamus is senseless. Effect will be given to every part of a statute except such parts as are utterly repugnant to the other portions of the statute and to the purpose of it. The legislature undoubtedly had in view People v. Goetting, supra, and gave the soldier this remedy by mandamus to do away with the effect of that decision, and not require him to resort to the long and expensive action of quo warranto.

The apprehension of the learned counsel for the respondent that the appointees to the office would not have their day in court, not being parties to the mandamus proceedings by name, and therefore injustice might result to them, is without foundation. When these appointments were made, they were in violation of law by a board charged with public duties. At least one of these appointees took his office clouded by this inherent vice, and he was liable to be deprived of it in a proper proceeding against the power appointing him. He had no vested right to the office thus coming to him through a violation of law. In disposing of the question as to the right of a soldier to the preference, the police board was the only necessary party. The only remedy sought was the correction of the illegal act of the appointing power, and the board, for all the purposes of that proceeding, represented its appointees. Hardly a proceeding by mandamus against a public body or officer has occurred or can be conceived where the rights of persons interested are or may not be affected who are not named in the proceeding. At all events, the legislature has given the soldier, in the respect we are considering, the right to the writ of mandamus; and the power has been constitutionally conferred, and we must administer the law as we find it.

The legislature, in many statutes, has indicated its determination to give the veterans of the late wars preference to appointive

offices, and that has become the settled policy of this state. A struggle has been going on in the courts in consequence of the desire to make partisan appointments, and the result has been to a great extent to nullify or evade the laws upon the subject. The last statute cited indicates an unmistakable determination to enforce this preference in favor of the soldiers. It condemns their exclusion for "partisan, political, or personal" reasons. It tenderly declares that age, loss of limb, or other physical impairment which does not incapacitate shall not be deemed to disqualify, and it concludes with the sweeping statement that the "burden of proving incompetency" shall be upon the defendant; so that, when the scarred and maimed veteran with his honorable discharge presents himself to the appointing power, though his hair is gray, and his wrinkles deep with coming age, he is presumed to be competent for the place, and must have it; and, if he is refused, the defendant must establish his incompetency, or its action will be overruled. There is no discretion left in the appointing power unless it can establish the incompetency. The statute is mandatory. When the statutory standard of competency is reached, the preferred candidate takes the office. It is of no consequence that others not preferred have superior qualifications. The appointing power cannot indulge in speculations as to comparative merit above that standard. If they are allowed to do this, it will be easy to evade the statute, and make partisan appointments. The court does not assume that partisan appointments were made or intended to be made in this particular case, but we wish to emphasize our position in this regard for the general good.

Turning to the facts in this case, we find that the respondents do not dispute the competency of this soldier to discharge the duties of this office. The court below, on the contrary, finds that he is competent, as we have seen; but that court and the respondents do say that the appointees would better discharge the duties of the office than the relator, and that is all. By chapter 717, Laws 1894, the civil service laws and rules do not apply to soldiers whose compensation does not exceed four dollars per day. This relieves the appellant from a civil service examination as prerequisite to an appointment.

These views lead to the conclusion that the judgment herein should be reversed, and a new trial had, with costs to abide event.