(115 App. Div. 269)

PEOPLE ex rel. DUNN v. METZ, Comptroller, et al.

(Supreme Court, Appellate Division, First Department. November 5, 1906.)

1. MUNICIPAL CORPORATIONS—BUILDING DEPARTMENT—AUTHORITY—STATUTES.
　　The Building Code, enacted under Greater New York Charter, Laws 1901, p. 208, c. 466, § 470, providing that in case of danger arising from the falling of any building the department of buildings shall cause the necessary work to be done to render the same temporarily safe, and may employ laborers necessary to perform the work, does not give to the department the power to make a contract for the storage of materials taken from an owner's collapsed building nor to employ watchmen to protect such materials.

2. MANDAMUS—PEREMPTORY WRIT—CONDITION PRECEDENT TO GRANTING.
　　A peremptory writ of mandamus should not be allowed where a question of fact must be disposed of before the granting of relief by manda-

mus and the relator in such a case can only demand an alternative writ, so that the question of fact may be disposed of.

[Ed. Note.—For cases in point, see vol. 33, Cent. Dig. Mandamus, § 405.]

3. SAME—COMPELLING PAYMENT OF UNLIQUIDATED CLAIMS.

Where a claim against a city involves charges, not based on any specific contract, for the rental value of land and for services of watchmen protecting property stored thereon, mandamus to compel the city to allow and pay the claim does not lie, and the proper remedy is to sue the city in an action at law.

[Ed. Note.—For cases in point, see vol. 33, Cent. Dig. Mandamus, §§ 235–237.]

Appeal from Special Term, New York County.

Mandamus by the people on the relation of Bartholomew Dunn, as executor of Thomas J. Dunn, deceased, against Henry A. Metz, as comptroller of the city of New York, and another. From an order granting a peremptory writ, defendants appeal. Reversed.

Argued before O'BRIEN, P. J., and INGRAHAM, LAUGHLIN, CLARKE and SCOTT, JJ.

Theodore Connoly, for appellants.

George H. D. Foster, for respondent.

INGRAHAM, J. This proceeding was commenced on the relation of Thomas J. Dunn for a peremptory writ of mandamus requiring the auditor of accounts in the office of comptroller of the city of New York to audit the account of the petitioner and directing the comptroller to pay the claim, thus audited. A peremptory writ of mandamus was granted as prayed for, and from the order granting it the comptroller appeals. The petition upon which this writ was granted alleges that on March 2, 1904, the Darlington Hotel which was in process of erection collapsed, leaving within the débris arising therefrom a number of persons, destroying life, and causing great confusion, and creating an emergency such as is contemplated by section 157 of the Building Code of the city of New York; that on March 2, 1904, the relator was instructed by the department of buildings to send 200 or more men to the said Darlington Hotel to demolish, raze, and remove the débris so that the fire and other departments and the hospitals might co-operate and assist in the recovery of the bodies of the killed and injured, and to save and protect the lives of the public, and to remove the actual and immediate danger of the falling of the said buildings or parts thereof, and the petitioner was at that time designated by the building department or the superintendent of buildings to undertake the removal from the premises of the débris, and to do the necessary work to render said buildings and its parts temporarily safe, and that he was ordered by the superintendent of buildings to do said work; and the petitioner was further ordered to find and provide a suitable place upon which to store the iron and steel of the said hotel until it should be called for by the superintendent of buildings or building department, and to preserve it from being stolen, tampered with, destroyed, or mutilated; all of which was directed, ordered, and required by the said building department or acting superintendent of build-

ings; that pursuant to said orders, direction, and request, the petitioner did cart, carry, pile, and store the steel or iron floor beams, columns, girders, etc., comprising a part of the said hotel to and at avenue A, on lots occupying the block from Sixty-Seventh to Sixty-Eighth streets, comprising eight house lots, which were devoted and used solely for the purpose of storing the said iron and steel; that the petitioner did also provide, keep, and maintain watchmen to preserve, protect, and guard the said iron and steel, as required by the said building department or superintendent of buildings; that said iron and steel was removed, carted, stored, watched, and guarded for a long period of time, viz., from March 2, 1904, to June 3, 1905, when the relator was directed by the department of buildings to deliver to Abraham Solomon the building material claimed by him as taken from the said hotel, and that pursuant to that order the petitioner delivered to the said Solomon the said materials. On May 3, 1905, the relator submitted to the superintendent of buildings a bill or statement of the charges which was:

"To three watchmen, 61 weeks, each at $17.50....................$3,202 50
To use of 8 lots at $50 per month each for 14 months............ 5,600 00
                                                                 ─────────
                                                                 $8,802 50

This bill was received by the superintendent of buildings and indorsed by William H. Class, chief clerk. There was submitted a further bill from May 3d to June 3d, aggregating $702.50.

In opposition to this motion there was presented an affidavit of the district attorney, in which he stated that at no time did he order or request the storage of steel or other part of the structure of the Darlington Hotel, and that he declined to certify to any expenditure in connection therewith. It is a little difficult to see what business the department of buildings or the relator had with the iron and steel belonging to this hotel. It was not an obstruction in the street or highway, nor was it property of the city, and neither the health nor safety of the city required that the city of New York should store and care for it for 15 months. No emergency was created so far as storing this steel was concerned, which justified the department of buildings in incurring an expense of upwards of $8,000. It is also a little difficult to see upon what principle the city should be put to an expense of upwards of $3,000 for hiring watchmen to guard these iron and steel beams. I imagine from their character that they were in no immediate danger of being stolen, and it was the duty of the owners to protect them, and not the city. The whole charge is unreasonable and unauthorized, and certainly should not be allowed unless there is some statute which imposes a liability upon the city for the costs of caring for their material. The Building Code was enacted by the board of aldermen under the provisions of section 470 of the Charter (chapter 466, p. 2081, Laws 1901). Assuming that this Code has the effect of a statute, I do not think that the superintendent of buildings has any power to make such a contract as that made by him with the relator, or that a charge un-

der such a contract was an obligation of the city of New York. The only provision which applies to such a case is as follows:

"In case of the falling of any building or part thereof in the city of New York, where persons are known or believed to be buried under the ruins thereof, it shall be the duty of the fire department to cause an examination of the premises to be made for the recovery of the bodies of the killed and injured. Whenever in making such examination it shall be necessary to remove from the premises any débris, it shall be the duty of the commissioners of the department of docks, of the department of parks, of the department of highways, and of the department of street cleaning, when called upon by the department of buildings to co-operate to provide a suitable and convenient dumping place for the deposit of such débris. In case there shall be, in the opinion of the department of buildings, actual and immediate danger of the falling of any building or part thereof so as to endanger life or property, said department shall cause the necessary work to be done to render said building or part thereof temporarily safe until the proper proceedings can be taken, as in the case of an unsafe building, as provided for in this Code. * * *. For the aforesaid purposes, the said fire department or department of buildings, as the case may be, shall employ such laborers and materials as may be necessary to perform said work as speedily as possible."

There is certainly no express power given to the department of buildings to store for the owner of the building any property, or make a contract for the storage of any materials taken from such a collapsed building. The only authority for the department to employ laborers is that contained in the last clause of the section which authorizes the fire department or the department of buildings to employ "such laborers and materials as may be necessary to perform said work as speedily as possible." If it became necessary to remove these beams from the premises it was the duty of other city departments to provide a suitable and convenient dumping place. It does not appear that these departments were called on or acted in the matter. Here were certain iron beams, the property of the owner of this building that had to be temporarily removed for the recovery of the bodies of those buried under the wreck. After the recovery of such bodies there was no necessity for storing these beams on the property of this petitioner or of the city. They could have been returned to the property or delivered to the owner; but there is nothing in this Building Code which contemplates the storage of property removed from such a collapsed building. If, however, there was any basis at all for the charge, a peremptory writ of mandamus should not have been allowed. The utmost that the relator could have demanded was an alternative writ, when the questions of fact could have been properly disposed of. I do not think, however, this mandamus was the proper remedy. There was involved in this claim a charge for the value of the use of those lots and for the services of watchmen. The city should not have been required to pay the amount of the charge without evidence that it was reasonable, and that the rental value of the lots was as claimed. For each of these lots the relator seeks to obtain the sum of $50 per month. It may be that such charge is reasonable, but there is no allegation in the petition that it was; or that $50 per month was the rental value of the property. Without some evidence of that kind before the court, certainly a peremptory writ was not justified. I have al-

so serious doubts as to whether the plaintiff could obtain payment of his claim by mandamus. The proper remedy was to sue the city and recover in an action at law. Here the amount was not based upon any specific contract. The reasonableness of employing three watchmen to prevent large iron beams from disappearing is certainly open to question, and, as before stated, the value of the use and occupation of these lots is not at all established. A different question presented is where the amount of the claims is liquidated, the only question being a question of law as to whether or not the city was responsible, as under a specific contract a specific amount is due; but where the right of the relator to recover and the amount of his recovery, if the city is liable at all, depends upon evidence, the court should not upon an application for a mandamus determine the question, but should leave the relator to his action at law.

I think the order appealed from should be reversed, with $10 costs and disbursements, and the motion for a mandamus denied, with $10 costs. All concur.

O'BRIEN, P. J. I concur in result on ground that mandamus is not the proper remedy.