Bartholomew Dunn, as Executor of Thomas J. Dunn, Deceased, Appellant, *v.* The City of New York, Respondent.

New York (city of) — action against city for storage of steel and iron work of collapsed building directed to be held by district attorney for use in criminal prosecution — such action brought after failure of proceeding for mandamus to compel auditor of city to audit such claim upon the ground that plaintiff's remedy, if any, was by an action against the city — city cannot now be heard upon defense, not raised at the trial, that plaintiff's claim is a county charge and should be presented to and audited by the county authorities.

1. It is claimed by plaintiff that certain steel and iron work was impounded by the district attorney of the county of New York to enable him to ascertain the cause of the collapse of a building and for the purpose of prosecution of any person who might be criminally liable for the loss of life caused thereby; that plaintiff's testator was directed by the city authorities and the district attorney of the county to procure a place for the storage of such material and to have the same carefully guarded and available for use in case of criminal prosecutions; that he provided such place, stored the materials and caused them to be guarded for some period of time. This action was brought to recover for the use of the real estate upon which the steel and iron were stored, and for the services of watchmen in guarding the same. On the trial the court limited the proof on the part of plaintiff to the question whether or not the district attorney of the county of New York ordered or directed the storage and guarding of the material. At the close of plaintiff's case, upon motion made by counsel for the city that there was no evidence in the case tending to show that the district attorney directed the storage of the material at the expense of the county or the city, the court dismissed the complaint. It is now insisted by the city that the expenses are a county charge and plaintiff has mistaken his remedy; that it was necessary that his claim should be presented for audit and audited by an auditor of accounts in the finance department. The plaintiff had filed a claim with the comptroller of the city prior to the commencement of the action, and after a failure to audit or pay the same a peremptory writ of mandamus was granted commanding an audit. The Appellate

Division upon an appeal in that proceeding held that mandamus was not the proper remedy, but that plaintiff's remedy, if any, was against the city in an action at law. The city did not raise the question now argued upon the trial of the action, but succeeded in the mandamus proceeding upon the theory that the remedy of plaintiff, if any, was by action. It cannot now be heard for the first time upon questions not presented upon the trial, especially as the only question there determined by the court was the sufficiency of evidence tending to show direction by the district attorney as to the storage and care of material. The evidence on that question presented a question of fact for the jury.

*Dunn* v. *City of New York*, 157 App. Div. 917, reversed.

(Argued June 16, 1916; decided July 11, 1916.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered July 17, 1913, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John C. Wait* and *Howard G. Wilson* for appellant. Whether the district attorney personally ordered the material in question to be stored and guarded and for official purposes is a question of fact. (*Hart* v. *H. R. B. Co.*, 80 N. Y. 622; *Wilson* v. *N. Y. Cont. Co.*, 129 App. Div. 125; *Smith* v. *N. Y. C. R. R. Co.*, 177 N. Y. 224; *Gordon* v. *Ashley*, 191 N. Y. 186; *Hirsch* v. *Jones*, 191 N. Y. 195; *Handy* v. *Met. St. R. Co.*, 70 App. Div. 29; *Schusterman* v. *Schwartz*, 54 App. Div. 634; *Delafield* v. *Armsby Co.*, 99 App. Div. 622; *Sinclair* v. *Higgins*, 111 App. Div. 206; *Morel* v. *Stearns*, 84 N. Y. Supp. 521; *Sabine* v. *Paine*, 148 App. Div. 730.)

*Lamar Hardy, Corporation Counsel* (*Terence Farley* and *William E. C. Mayer* of counsel), for respondent. There is no liability on the part of the defendant for any orders and directions which may have been given by the

department of buildings relative to the storing of the materials in question. (*People ex rel. Dunn* v. *Metz*, 115 App. Div. 269.) On the assumption that the expenses were necessarily incurred by the district attorney and are, therefore, a county charge, plaintiff has mistaken his remedy. (L. 1901, ch. 466, § 1583.)

HOGAN, J. March 2d, 1904, about two o'clock in the afternoon of that day, the Hotel Darlington, which was in process of construction on Forty-sixth street between Fifth and Sixth avenues in the city of New York, collapsed. The plaintiff's testator had theretofore been appointed by the bureau of buildings of the city of New York to take charge of the emergency and wrecking work of the bureau. Immediately upon notice of the collapse of the building, plaintiff's testator was directed by the acting superintendent of buildings to proceed at once to the premises and do whatever was necessary to render said premises temporarily safe. By reason of the collapse of the building several workmen engaged in the construction of the same lost their lives. The charter of the city of New York imposes upon the fire department the duty of extricating people or the bodies of any killed therein from the ruins of a building and upon the building department the duty of removing the debris. It also provides that the departments of docks, parks, highways and street cleaning shall co-operate to furnish a dumping place for the deposit of such debris.

Immediately upon receipt of notice, plaintiff's testator sent his superintendent and men to the premises in question, and they proceeded to assist the fire department in searching for bodies and for people who might be within the collapsed building.

It was claimed by the plaintiff's testator that the steel and iron work was impounded by the district attorney of the county of New York to enable him to ascertain the cause of the collapse of the building and for the purpose of

prosecution of any person who might be criminally liable for the loss of life caused thereby; that plaintiff's testator was directed by the city authorities and the district attorney of the county of New York to procure a place for the storage of such material and to have the same carefully guarded and available for use in case of criminal prosecutions; that he provided such place, stored the materials and caused it to be guarded for some period of time. This action was brought to recover for the use of the real estate upon which the steel and iron was stored, and for the services of watchmen in guarding the same. On the trial of the action the trial justice limited the proof on the part of plaintiff to the question whether or not the district attorney of the county of New York ordered or directed the storage and guarding of the material. At the close of plaintiff's case, upon motion made by counsel for the city that there was no evidence in the case tending to show that the district attorney directed the storage of the material at the expense of the county or the city, the trial justice dismissed the complaint. The judgment entered in favor of the defendant was unanimously affirmed by the Appellate Division. The plaintiff appeals to this court.

The plaintiff called as a witness John L. Jordan, who at the time of the collapse of the building was assistant superintendent of buildings for the borough of Manhattan and was acting as superintendent on the day in question, the superintendent at that time being in the state of Florida. Mr. Jordan testified in substance that he directed Mr. Dunn, plaintiff's testator, to proceed with his men to the scene of the collapsed building, to get them on the work of rescue; that at the time of the collapse of the building about ten stories had been constructed, steel skeleton frame inside, surrounded with masonry work, brick walls. Upon his arrival at the place in question he found the entire framework had collapsed and was piled up in a mass about three and one-half or

four stories high. Steel girders and cast iron columns were broken and were all pitched into a mass and the firemen were then working to remove bodies from the ruins; that Mr. Dunn's superintendent, assisting in the work, was there with his men; that about five o'clock in the afternoon, before any of the iron or steel work had been removed, he met Mr. Jerome, then district attorney for the county of New York, on Forty-sixth street and had a conversation with him. Mr. Jerome told the witness that Mr. Train would have charge of the work of investigation, and that he, Jerome, would let him know the next day if there were to be any further people to be interested in the matter so far as his office was concerned; that the following day Mr. Jerome told him that Mr. Parsons would have charge of the investigation of the iron work and the structural work, and asked him, Jordan, to appoint an engineer to assist him in the investigation which he, witness, did; that Mr. Jerome further told him that he would have to be very careful about the removal of the steel work and the iron work, so that a very careful investigation could be made by the two engineers; that thereafter the structural steel and iron consisting of girders, columns and beams which were broken or twisted were removed from the ruins and piled in the street so that it incumbered the street, making it practically impassable between Fifth and Sixth avenues; that a suggestion was made to him by Mr. Jerome as to where the material should be stored for future investigation, if any, to which the witness replied that the highway department had informed him that they had no place where the material could be stored, and Mr. Jerome said, "Well, we must preserve this steel work and cast iron columns somewhere for investigation, or, may be, for evidence." The witness thereupon asked the plaintiff's testator and his superintendent if they could secure an open yard or some place where the material could be protected, and the plaintiff's

testator replied that he had a yard on Sixty-eighth street and Second avenue or First avenue, and thereupon witness reported to Mr. Jerome that this place was available, and Jerome replied it was all right, to take it and put watchmen over it to see that it wasn't disturbed so that they could have it if they wanted any future investigation later on, when it came to any criminal prosecution. The witness further testified that the material was stored in the yard and watchmen were kept over the same until a letter was received from Mr. Jerome that he had no further use for it and to return it; that Mr. Jerome told him that he wanted the material guarded and protected so that nobody could tamper with it; they wanted to examine where these cast iron columns were broken, so as to see if there were any flaws in the castings or to see whether any inferior material was used in the construction, " and if tampered with, it might destroy some evidence, I assume."

Mr. Jordan further testified that on the 4th day of March, 1904, he received a letter from Mr. Jerome in which the district attorney wrote: " As I understand you, you are having all the steel and iron taken from the building kept in the yard. Mr. Parsons seems to think this a very excellent plan, and I trust it will all be retained there until a final inspection of it can be made after the wrecking crew have uncovered the foundations of the building, as Mr. Parsons thinks that the opportunity to examine it well when it is finally taken away may be very important.

" I desire to express to you my appreciation of your courtesy in facilitating my office in its work."

The witness also testified that it was not possible to take the material from the street and put it back on the site of the building; that upon inquiry by him of other departments of the city he was advised that the city had no room to store these steel beams and iron columns.

The trial justice excluded all evidence of directions

given by Mr. Train, although it was conceded that he had charge of the investigation before the coroner. It was also conceded by the city that Mr. Jerome employed Mr. Parsons, who made an investigation, went to the place where the material was stored and reported back to the district attorney, as did the engineer appointed by the building department, and that both of the engineers testified fully at the coroner's inquest, and thereafter an indictment was found. It was also practically conceded on the trial that the material so far as stated in the bills rendered by the plaintiff's testator to the city through the building department, and which had been marked "correct" by the chief clerk, was placed upon the lots in question, and that the bills showed the length of time watchmen were employed and the lots used. It was further conceded that Mr. Train had charge of the investigation, representing the district attorney, to inquire into the question whether a crime had been committed.

Evidence was also offered by the plaintiff that the material was stored between Sixty-seventh and Sixty-eighth streets and the Eastern Boulevard, and covered some eight or ten lots there; that the occasion of using so much land was due to the weight of the material which required derricks to pile it up if it was to occupy less space.

In April, 1906, plaintiff instituted a proceeding in which he sought a peremptory writ of mandamus requiring the auditor of accounts in the office of the comptroller of the city of New York to audit the account of petitioner and directing the comptroller to pay the claim thus audited. A peremptory writ of mandamus was granted as prayed for and an appeal from the order so made was taken by the defendant to the Appellate Division, where the order was reversed upon an opinion written by Mr. Justice INGRAHAM, which was concurred in by three of the justices and by the fourth on the ground that mandamus was not the proper remedy. The facts are set forth in the report of that case (*People ex rel. Dunn* v.

*Metz*, 115 App. Div. 269), and are practically the same facts set forth in the complaint. Upon the hearing of the application for a mandamus affidavits were filed in opposition to the application and the court on appeal held that if there was any basis at all for the charges made by the relator in that proceeding a peremptory writ of mandamus should not have been allowed; that the utmost the relator could have demanded was an alternative writ, when the question of fact could have been properly disposed of; that in any event there was involved in the claim a charge for the use of the lots and for the services of watchmen, and that the city should not be obliged to pay the same without evidence that it was reasonable and that the rental value of the lots was as claimed, and the court held that the peremptory writ should be denied and that plaintiff's proper remedy was to sue the city and recover in an action at law.

The plaintiff thereupon, pursuant to the decision of the Appellate Division, commenced this action and has been excluded from the privilege of showing the reasonable value of the use of the lots and services of the watchmen, and defeated solely upon the question of failure to establish as a matter of law direction by the district attorney for the storage of the material in question.

We think the evidence offered by the plaintiff upon the trial of this action upon the subject of the direction of the district attorney as to the storage of the material in question presented a question of fact for the jury.

From the testimony of Mr. Jordan the jury might have found that the district attorney desired the material preserved for future investigation for evidence in any criminal proceedings which might be instituted by reason of the collapse of the building and the death of several individuals thereby; that when the witness reported to Mr. Jerome that the highway department or the bureau of buildings did not have any space available for the storage of the same and that the plaintiff's testator had the avail-

able space stated, that he, Jerome, told the witness it was all right, to take the material to that place, put watchmen over it and see that it was not disturbed so that they would have it if they wanted any future investigation later on; that Mr. Jerome having by observation knowledge of the amount of the material would of necessity realize that expense would be incurred in storing such a quantity of material and guarding the same, and that by his direction the material was stored and guarded upon the property of plaintiff's testator, and that the plaintiff would be entitled to recover the reasonable value of the use of the premises and any reasonable disbursements made by him by reason of the order of the district attorney.

Counsel for the city argues that the expenses, assuming they were incurred by order of the district attorney, are a county charge and plaintiff has mistaken his remedy by reason of the fact that it was necessary that his claim should be presented for audit and audited by an auditor of accounts in the finance department.

It is alleged in the complaint and it was conceded upon the trial that the plaintiff had filed a claim with the comptroller of the city prior to the commencement of the action in question and that the same had not been paid.

The identical claim in suit was originally presented for audit and after a failure to audit the same a peremptory writ of mandamus was granted commanding an audit of the same. The Appellate Division upon appeal in that proceeding held that mandamus was not the proper remedy, but plaintiff's remedy, if any, was against the city at law to recover the reasonable value of the use of the premises and the services of any persons employed to guard the material. The city did not raise the question now argued upon the trial of the action. In the mandamus proceeding it succeeded upon the theory that the remedy of plaintiff, if any, was by action. It cannot now be heard for the first time upon questions not pre-

sented upon the trial, especially as the only question determined by the court upon the trial was the sufficiency of evidence tending to show direction by the district attorney as to the storage and care of said material. As we have concluded that the evidence on that question presented a question of fact, the judgment should be reversed, and a new trial granted, with costs to abide the event.

WILLARD BARTLETT, Ch. J., HISCOCK, COLLIN, CUDDE-BACK, SEABURY and POUND, JJ., concur.

Judgment reversed, etc.