COMMONWEALTH WATER COMPANY, Respondent, *v.* VILLAGE OF CASTLETON, Appellant.

Third Department, July 8, 1920.

Water companies — franchise — effect of special contract between village and company as limiting franchise — action by water company to recover hydrant rentals from village after expiration of contract — liability of village on express contract or on quantum meruit — villages — village of Castleton — application of subdivision 21 of section 89 of Village Law in reference to auditing accounts — neglect of board of trustees to return or object to unverified account as waiving defect.

A permit granted by a village to a water company under section 80 of the former Transportation Corporations Law (Law of 1890, chap. 566), as amended, is not limited in time by a special contract entered into between the village and the company requiring the company to establish a system of waterworks to supply the village, and to have ready for use a certain number of street hydrants, for which the village is to pay an annual rental, and relieving it from municipal and road taxes under certain conditions, nor does said contract affect the right or duty of the water company to supply the village with water as required by law.

After the expiration of a contract between the defendant village and the plaintiff, the village ceased to use water from the company's hydrants and so notified the company. In an action by the company to recover hydrant

rentals for the time intervening between the expiration of the contract and the sale of the plant to the village, it appeared that while the company supplied its mains with water to take care of its private customers, it did not go to the expense of disconnecting or sealing its hydrants, neither did it do any act or incur any expense in order to furnish fire protection to the village and it did not furnish any such protection. *Held,* that the water company is not entitled to recover upon an express contract, and the fact that it did not or could not seal its hydrants, and that no occasion arose for their use during the year, does not make the village liable upon a *quantum meruit.*

Subdivision 21 of section 89 of the Village Law applies to accounts against the village of Castleton, which was incorporated by chapter 232 of the Laws of 1827, and accordingly the plaintiff's claim for water rentals should have been presented to the board of trustees in an itemized account properly verified for audit, and no action could be brought upon it within a month after such presentation.

The presentation of an itemized, verified bill for audit, thirty days before action brought, is a condition precedent to the right to sue, and, therefore, that fact should have been pleaded by the plaintiff.

If an unverified statement of the account was presented by the plaintiff to the defendant's board of trustees, the failure to return it, or to object to it on the ground that it was not verified, was not a waiver of the defect.

Appeal by the defendant, Village of Castleton, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Rensselaer on the 22d day of July, 1918, upon the decision of the court rendered after a trial before the court and a jury at the Rensselaer Trial Term, both parties having consented at the close of the trial that the issues be determined by the court without a jury.

The opinion of the Trial Term is reported in *Commonwealth Water Co.* v. *Village of Castleton* (171 N. Y. Supp. 542).

*Jarvis P. O'Brien,* for the appellant.

*Ellwood M. Rabenold* [*Allan R. Campbell* of counsel], for the respondent.

John M. Kellogg, P. J.:

The complaint seeks to recover hydrant rentals, in its first count, upon a special contract, and, in its second count, upon a *quantum meruit.* May 26, 1897, the village made a contract with the Castleton Water Company, a corporation to whose rights and liabilities the plaintiff has succeeded, which, in

consideration of the covenants and agreements therein contained " and the permit granted by the " village, required the plaintiff to establish a system of water works to supply the village with wholesome water and to have ready for use a certain number of street hydrants, for which the village was to pay an annual rental of thirty-five dollars each. A rate was given for private consumers and, among other things, the contract provided that in consideration of the price for which the company furnished water to the hydrants, and in further consideration of the company's agreeing to furnish the school buildings, public buildings and churches, and certain drinking fountains, with water gratuitously, the village was to remit all municipal and road taxes upon said water works during the term of the contract. The contract provided that it should continue for five years, with the right to the village to renew it for ten years more at the same rates. The permit referred to in the contract was evidently executed pursuant to section 80 of the former Transportation Corporations Law (Gen. Laws, chap. 40; Laws of 1890, chap. 566), as amended by chapter 617 of the Laws of 1892, and is what is commonly spoken of as a franchise. The contract referred to was made pursuant to section 81 of that law, as amended, and fixed the price of water and imposed certain conditions upon the company. The five-year term of the contract did not in any way limit the term of the permit, or the right or duty of the water company to supply the village with water as required by law. So far as we are interested, it applied to the use of the water at the hydrants and the price paid. Two renewals of the contract were made, with the result that it expired by the terms of the renewal December 1, 1912. The local superintendent of the plaintiff appeared before the board of trustees and asked for a renewal of the contract. The board refused to renew the contract and notified him that the water would not be used. The president of the plaintiff, thereupon, requested an interview with the board of trustees as to a renewal of the contract, to which it replied that it was not in a position to renew the contract, as it contemplated putting in a new plant or purchasing the old one. The president of the village, immediately following the refusal of the village to renew the contract, gave notice to the public officials not

to use the water from the company's hydrants, and none was thereafter used, and the president of the water company notified its local superintendent to seal or lock the hydrants, " that they could not use them if they wouldn't pay for them," to which he replied that there was no way of sealing the hydrants. The village finally purchased the plant of the water company and this action is brought to recover the hydrant rentals for the year intervening between the expiration of the contract and the sale of the plant.

Immediately after the village refused to renew the contract, it put its steam engine in position for fire protection. Fortunately there were no fires and the steam engine was not used; neither was any water used from the company's hydrants. No road or municipal taxes were collected from the company during the year; water was used during the year at the school buildings, churches and public buildings. It is clear that the village refused to renew the contract, or to use the water from the hydrants, and that the plaintiff understood that such was the fact. It, however, claims that its hydrants were there ready for use and that it furnished fire protection to the village and is entitled to pay therefor. The company necessarily supplied its mains· with water to take care of its private customers. It did not go to the expense of disconnecting or sealing its hydrants. It does not appear that it did any act, or incurred any expense, in order to furnish fire protection to the village, or that it did furnish such protection. The plaintiff was defeated so far as it relied upon an express contract, but it has been allowed damages on a *quantum meruit.* The fact that it did not or could not seal its hydrants, and that no occasion arose for their use during the year, does not make the village liable upon a *quantum meruit.* The judgment is against the evidence.

Concededly an itemized sworn account was not made out against the village, or presented for audit as required by subdivision 21 of section 89 of the Village Law.* If that section is applicable to this village, the judgment cannot stand. The village was incorporated by chapter 232 of the Laws of 1827. The special act does not in terms require an

---

* Since amd. by Laws of 1917, chap. 150.— [Rep.

audit of accounts by the trustees, but provides that the treasurer may pay only by an order signed by at least a majority of the trustees, which would be three or more trustees. (See §§ 1, 8.) Section 380 of the Village Law provides that a village incorporated under and subject to a special law, and each officer thereof, possesses all the powers and is subject to all the liabilities and responsibilities conferred or imposed upon a village incorporated under that chapter, or upon an officer thereof, not inconsistent with such special law. The provision for the presentation and audit of village accounts is to protect the village from unnecessary law suits and litigations and to give a creditor of the village an easy way of having his account adjusted and settled. Evidently the Village Law was intended to apply to all villages except where the terms of a special law otherwise require. We do not find any provision in the special act so inconsistent with the provision of subdivision 21 of section 89 of the Village Law as to exempt the village from the operation of that subdivision. It is a reasonable provision for the protection of the public and should be extended to every village so far as may be.

As we have seen, under the special law no account can be paid without the written order of a majority of the trustees. Under the Village Law an account for property purchased, materials furnished, services rendered, or disbursements, must be itemized, properly verified and presented to the trustees for audit, and no action can be brought upon it within thirty days after such presentation. The two provisions are not inconsistent, but easily harmonize, with the result that a majority of the trustees must approve of the account before it is paid; that the approval is to be at a meeting of the board; that the account must be itemized and properly verified and that no action shall be brought upon it within thirty days after it is presented for audit. The recovery here is upon a *quantum meruit* for the value of services rendered, an account which from its nature must be audited pursuant to the provisions of the Village Law.

While the defendant's motion for a dismissal of the complaint was pending, the plaintiff offered in evidence its letter to the defendant's attorney, dated December 6, 1913, said to

Third Department, July, 1920. [Vol. 192.

inclose a bill against the village, and a letter from the attorney acknowledging the same and stating that it had been forwarded to the village clerk. The evidence was objected to as not pleaded. Counsel offered to amend the complaint to allege that the claim was presented to the village board showing the items of services and that the action was commenced thirty days thereafter and that verification by affidavit was waived by the acceptance of the bill. The court, after discussing the motion for a dismissal of the complaint, stated: " I think it would be proper for me to suggest that certain facts be put upon the record to the effect that a bill was sent to the defendant's attorneys and that it was by them forwarded to the clerk of the board and nothing was ever done about it." Plaintiff's attorney replied " that was in the letter of December 6, 1913." Defendant excepted to the refusal to grant the nonsuit. The action was begun May 23, 1914. No facts were put upon the record as suggested by the court, although it makes findings upon the subject, but we find no evidence to sustain the findings. No amendment of the complaint was made.

The presentation of an itemized, verified bill for audit, thirty days before action brought, is a condition precedent to the right to sue and, therefore, should have been pleaded. (*Wood & Selick* v. *Ball,* 190 N. Y. 217.) If we assume that a statement of the account unverified was presented to the board, the failure to return it, or to object to it on the ground that it was not verified, is not a waiver of the defect. (*Cotriss* v. *Village of Medina,* 139 App. Div. 872; 206 N. Y. 713.)

The judgment should be reversed upon the law and the facts and a new trial granted, with costs to the appellant to abide the event.

All concur.

Judgment reversed on law and facts and new trial granted, with costs to the appellant to abide the event. The court disapproves the 7th, 8th, 9th, 10th, 11th, 12th, 13th and 14th findings of fact.