PUBLIC SERVICE COMMISSION FOR FIRST DISTRICT v. INTERBOROUGH RAPID TRANSIT CO.

(Supreme Court, Appellate Division, First Department. April 14, 1916.)

1. PUBLIC SERVICE COMMISSIONS ⬅➡21—MANDAMUS—REMEDY—NATURE OF.
    Under Public Service Commissions Law (Consol. Laws, c. 48) § 57, authorizing and requiring the commission, whenever it shall be of the opinion that a common carrier, railroad, or street railroad corporation is failing or omitting, or about to fail or omit, to do anything required of it by law or by order of the commission, to direct its counsel to commence an action or proceeding in the Supreme Court for the purpose of having such violations or threatened violations stopped and prevented, either by mandamus or injunction, the court is required in all cases, there being no provision for the issuance of an alternative writ, to inquire immediately and summarily into the facts and either grant final judgment dismissing the action or issue a writ of mandamus or injunction.
    [Ed. Note.—For other cases, see Public Service Commissions, Dec. Dig. ⬅➡21.]

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. MANDAMUS ☜133—RIGHT TO WRIT.

Public Service Commissions Law, § 26, requires street railroad companies to furnish such service and facilities as shall be suitable and adequate. Section 56, subd. 1, makes it the duty of such companies to obey, observe, and comply with every order made by the commission, and provides a penalty for disobedience; while section 49, subd. 2, authorizes the commission to regulate service by its orders. The commission passed an order requiring a street railroad company to operate a given number of trains, or the maximum number that could be operated. The company attempted to comply with the order; but it was impossible at all times to operate the maximum, and in cases of unusual travel there was some congestion. *Held*, that mandamus was not the proper remedy to enforce the company's obedience, and so the writ should be refused, regardless of the company's prior breaches, for in case of failure for any reason the company would be in contempt.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 268; Dec. Dig. ☜133.]

Appeal from Special Term, New York County.

In the matter of the petition, under Public Service Commissions Law, § 57, by the Public Service Commission for the First District for a writ of mandamus against the Interborough Rapid Transit Company. From an order denying the application and dismissing the proceeding, petitioner appeals. Affirmed.

Argued before CLARKE, P. J., and LAUGHLIN, SCOTT, SMITH, and PAGE, JJ.

Henry H. Whitman, of New York City (George S. Coleman, of New York City, on the brief), for appellant.

Henry J. Smith, of New York City, for respondent.

LAUGHLIN, J. [1] The application for the writ is based on the provisions of section 57 of the Public Service Commissions Law, which authorize and require the commission, whenever it "shall be of opinion" that a common carrier, railroad, or street railroad corporation "is failing or omitting or about to fail or omit to do anything required of it by law or by order of the commission, or is doing anything or about to do anything or permitting anything or about to permit anything to be done, contrary to or in violation of law or of any order of the commission," to direct its counsel "to commence an action or proceeding in the Supreme Court * * * for the purpose of having such violations or threatened violations stopped and prevented either by mandamus or injunctions." In so far as the statute gives a remedy by mandamus, it prescribes the procedure *prior* to the issuance of the writ. No alternative writ is authorized for the determination of controverted facts. The court is required in all cases, whether there is an appearance or answer by the corporation against which the proceeding is instituted, or whether it defaults, and whether the application be in an action for an injunction, or in a proceeding for a writ of mandamus, to inquire immediately and summarily into the facts and circumstances, and grant final judgment, either dismissing the action or proceeding, or directing that "a writ of mandamus or an injunction or both issue as prayed for in the petition or in such modified

or other form as the court may determine will afford appropriate relief."

[2] The duty was enjoined on the respondent by section 26 of the Public Service Commissions Law to furnish "such service and facilities as shall be safe and adequate and in all respects just and reasonable." Section 56, subd. 1, of said law makes it the mandatory duty of the respondent to "obey, observe and comply with every order made by the commission, under authority of this chapter so long as the same shall be and remain in force," and provides a penalty not exceeding $5,000 for a violation of any of the provisions of the Public Service Commissions Law, and for a failure or omission or neglect to obey, observe, or comply with any order or direction or requirement of the commission, and provides that in case of a *continuing* violation, every day's continuance thereof shall be deemed a separate and distinct offense; and subdivision 2 of said section declares that the officers and agents of a corporation who fail to obey, observe, and comply with any provision of any order of the commission shall be guilty of a misdemeanor. Section 49, subd. 2, of the Public Service Commissions Law, provides among other things as follows:

"Whenever the commission shall be of opinion, after a hearing, * * * that the regulations * * * or service of any such common carrier * * * are unjust, unreasonable, unsafe, improper or inadequate, the commission shall determine the just, reasonable, safe, adequate and proper regulations * * * and service, * * * and prescribe the same by order * * * and thereafter it shall be the duty of every common carrier * * * to observe and obey each and every requirement of every such order so served upon it, and to do everything necessary or proper in order to secure absolute compliance with and observance of every such order by all of its officers, agents and employés."

On the 7th day of January, 1913, the commission, pursuant to the statutory provisions last quoted, made an order requiring the respondent, among other things, to "operate daily, including Sundays and holidays, on all subway express and local tracks in each direction, past every two successive stations on the express tracks and every three successive stations on the local tracks during all hours of the day and night in each 20-minute period, beginning on the even hour, 20 minutes past the hour and 40 minutes past the hour, (a) a sufficient number of trains and cars to provide a number of seats at least equal to the number of passengers, or (b) the maximum number of trains and cars that can be operated." As authorized by section 23 of the Public Service Commissions Law, the order required the respondent to notify the commission whether it accepted and would obey the terms thereof, and it did accept and promise to obey the terms of the order. The order, the enforcement of which by mandamus is sought merely prescribes the *general continuous* duty of the respondent with respect to service as a common carrier.

The maximum service which it is possible for respondent to render is 33 local trains of 6 cars each, and the same number of express trains of 10 cars each, per hour. When the proceeding was instituted, the maximum service was being regularly maintained about 6 hours per day. The evidence fairly shows that the respondent could not,

with safety to the public, to its employés, and to its property, furnish the maximum service *continuously*. The evidence further shows that the respondent, after accepting the order, took steps to comply therewith, and has ever since supervised the service with a view to complying with the order, but as economically as possible.

The petition on which the proceeding was instituted was verified on the 18th day of January, 1913, and in it violations of the order were charged generally on the 17th and 20th days of November, 1914, with respect to both local and express service in each direction. Prior to the hearing, which commenced on the 14th day of April, 1915, a bill of particulars of these violations was furnished by the attorney for the petitioner, and therein the alleged violations on November 17th were limited to south-bound express trains past the Ninety-Sixth street and Seventy-Second street stations in the three 20-minute periods between 10 a. m. and 11 a. m., and to north-bound express trains past the same stations in the single 20-minute period between 4 and 4:20 p. m.; and on November 20th to south-bound express trains past the Grand Central and Fourteenth street stations in the 20-minute period between 11:20 and 11:40 p. m., and north-bound express trains past Seventy-Second street and Ninety-Sixth street stations in the two 20-minute periods between 11 and 11:20 p. m. and 11:40 and midnight, and the south-bound local trains past Sixty-Sixth street, Fifty-Ninth street, and Fiftieth street stations in the single 20-minute period between 8 and 8:20 p. m., and north-bound local trains past the same stations in the three 20-minute periods between 11 and 11:40 p. m., and 12:20 and 12:40 the following morning. Ordinarily the travel is greatest in the winter. The month of November is known as the "transition period" between the summer and winter schedules, and during that month the respondent gradually increases the service. The winter schedule, which substantially increased the service, went into effect on the 30th day of November, 1914, or within the period of two weeks after the alleged violations of the order. On the hearing, the petitioner was permitted to show other violations on the 11th and 13th of January, 1915; and in behalf of the respondent evidence was offered tending to show that at the time the proceeding was instituted, and at the time of the hearing, it was maintaining the service required by the order.

The evidence shows, and the fact is manifest, that unless the maximum service is maintained at all times violations of this order may be unavoidable, for the company has not facilities for maintaining and does not maintain extra trains at the different stations to be added to the service when a count of passengers indicates the necessity therefor to conform to the order; and on extraordinary occasions, such as a noted celebration, a parade, or a fire, or other public excitement by which crowds of people may be attracted to a given section along the route of the subway, and when an unusual number of passengers is received at a given station, and particularly stations where connection is made with other carriers, it is evident that the service may become seriously congested temporarily. It is likewise manifest that compliance with the order may be prevented by unavoidable accidents. At-

tention is drawn to these matters here, not with a view to excusing the respondent from complying with the order in so far as concerns violations at issue herein, but to show the impropriety of attempting to enforce compliance with the order by a peremptory writ of mandamus, which is and should be issued only upon the ground that there has been a failure to perform a clear, specific, legal, ministerial duty, absolutely imposed by law, which it is incumbent upon the respondent to perform, and which it has failed to perform, and which may still be performed, and then the court directs the respondent to perform forthwith, and to make a return to the court of the manner in which the duty has been performed. From the very nature of the writ and the remedy intended to be afforded thereby, the only return that can be made to a peremptory writ of mandamus is in effect a certificate to the effect that the requirements of the writ have been complied with. High on Extraordinary Leg. Rem. (3d Ed.) § 549.

While the Legislature has prescribed in the Public Service Commissions Law a substitute for the provisions of the Code of Civil Procedure with respect to the proceedings prior to the issuance of a peremptory writ of mandamus, it has not, we think, attempted to change the functions of the writ. Section 2072 of the Code of Civil Procedure provides that peremptory writ of mandamus must be made returnable at a Special Term of the Supreme Court, or at a term of the Appellate Division, to be designated therein; and by section 2073 failure to make return is punishable as for contempt of court. The return to a peremptory writ of mandamus must be annexed to a copy of the writ, and must, before the expiration of the first day of the term at which it is returnable, either be delivered in open court or filed in the office of the clerk of the county; and, as already observed, it must be to the effect that the writ has been complied with. This necessarily shows that it is not the appropriate remedy to compel performance of a *continuing* duty or duty arising in the future. See Fiero on Sp. Proc. (3d Ed.) p. 1356. It is not the function of a writ of mandamus to operate as a continuing mandatory injunction. In Lehmaier v. Interurban St. Ry. Co., 177 N. Y. 296, 69 N. E. 596, the Court of Appeals defined the functions of the writ of mandamus, as follows:

"The proper function of the writ of mandamus is to compel the doing of a specific thing based upon a legal right. It does not require much argument to show that the writ of mandamus is not, in this case, an appropriate remedy to compel a general course of official conduct or a long series of continuing acts, as it is impossible for the court to oversee the performance of such duties."

Compliance with the order with respect to service on the days of which complaint is made in the petition cannot now be compelled. The duty with respect to that service was to run sufficient trains on the days specified, and manifestly that duty was not a continuing one, which may be performed now. If the respondent had defied the commission, or refused to take steps to comply with the order, doubtless it could have been set in motion by mandamus; but it did evidently in good faith proceed to comply with the order. We are therefore

of opinion that mandamus is not the appropriate remedy for the alleged violations of the order of the Public Service Commission, or for any failure on its part to *fully* comply therewith, and that the proceeding was properly dismissed.

It follows that the order should be affirmed, with $10 costs and disbursements.    Order filed.    All concur.