STATE DIVISION OF HUMAN RIGHTS, on Complaint of SANTO GERACI, Petitioner, v NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES et al., Respondents. (Proceeding No. 1.)

STATE DIVISION OF HUMAN RIGHTS, on Complaint of MITCHELL GREEBEL, Petitioner, v NEW YORK STATE PARKS AND RECREATION COMMISSION, Respondent. (Proceeding No. 2.)

Second Department, November 8, 1982

52

APPEARANCES OF COUNSEL

*Ann Thacher Anderson* (*Harry Starr* of counsel), for petitioner in Proceeding No. 1.

*Ramon J. Rodriguez* (*Michael Kernan* of counsel), for New York State Department of Correctional Services, respondent in Proceeding No. 1.

*Calvin M. Berger* (*John K. Dalton* of counsel), for New York State Department of Audit and Control, respondent in Proceeding No. 1.

*Ann Thacher Anderson* (*Elaine Berger* of counsel), for petitioner in Proceeding No. 2.

*Calvin M. Berger* (*John K. Dalton* of counsel), for N.Y.S. Dept. of Audit and Control and *Harvey Randall* for N.Y.S. Dept. of Civil Service in Proceeding No. 2.

OPINION OF THE COURT

*Per Curiam.*

█ The core issue pressed upon this court by all the parties[1] for decision is whether a money award against the State of New York can constitutionally be made by the Commissioner of Human Rights and enforced by the Appellate Division of the Supreme Court rather than by the Court of Claims. We answer in the affirmative.

---

**1.** The commissioner declined to oppose the Comptroller's application to intervene in the Greebel matter; instead, the commissioner urges this court to resolve on the merits in both matters the "basic question of the legislative mandate that the Division investigate, hear and seek to remedy proven claims of unlawful discriminatory practices even when filed against the State agencies and employers". It was noted by the Comptroller that the Commissioner had been unable to obtain clarification of that mandate from the State Legislature in 1977 and 1978. Obviously the commissioner, disappointed in the legislative process, hopes for better luck in the courts.

In the first matter the State Department of Correctional Services was found by the commissioner to have unlawfully discriminated against Santo Geraci in dismissing him from his position as a correction officer because his age exceeded the maximum fixed by the department. The commissioner's order directed the department to pay a sum of money purportedly representing lost wages with interest, less standard payroll deductions, in addition to the sum of $250 for mental anguish. The Human Rights Appeal Board dismissed as untimely the department's appeal of the order and after numerous demands for payment, a voucher for the back pay amount only was prepared and then certified by the Department of Civil Service, which agreed that complainant had been illegally ousted from his office. After a check in the amount of $1,839.81 for back pay was sent to complainant, the Attorney-General ruled in an opinion requested by the State Comptroller that under the Human Rights Law the commissioner was vested with sufficient general jurisdiction over the State to award "such compensatory damages as are appropriate to compensate for the wrong suffered" (Executive Law, § 297) and to seek enforcement of such award in the Appellate Division (Executive Law, § 298) without relegation to suit in the Court of Claims. This opinion, dated February 28, 1980, reasoned that the State had impliedly waived sovereign immunity from suit in the same way it had expressly waived such immunity in section 77 of the Civil Service Law, which authorizes officers or employees removed in violation of that chapter to recover lost earnings.

The State Department of Correctional Services answered the instant application for enforcement by arguing that it was untimely brought under section 298 of the Executive Law and that, on the merits, the award was fatally defective in being predicated upon a record lacking substantial evidence and an erroneous ruling of substantive law. While conceding that there is "no question" that the State is "subject to" the Human Rights Law, the State Comptroller argued that the commissioner's jurisdiction did not extend to entertaining money claims against the State under section 297 of the Executive Law because the Constitution (art VI, § 9) vests "exclusive" jurisdiction over

such claims in the Court of Claims. Further, he argued that enforcement was unavailable in this court because he had not been joined as a party to the original proceeding. Also, there was neither a legal basis authorizing, nor a legislative appropriation covering, interest or damages for mental anguish.

The second matter is before this court in a different posture. The commissioner obtained on complainant Mitchell Greebel's behalf an order on default from this court dated December 1, 1980 to enforce an unappealed award against the State Parks and Recreation Commission covering back pay (less deductions) in the amount of $1,396.80, with interest, plus $500 for mental anguish. The State Comptroller seeks leave to intervene and set aside this order because the commissioner has threatened to initiate contempt proceedings for noncompliance. The Comptroller raises the identical constitutional arguments set out in the Geraci matter. Additionally, he points out that in Greebel's case the award for lost earnings was predicated on an assumption that but for the State's wrongful act of discrimination in refusing to hire Greebel, a Sabbath observer, he would have been appointed to the civil service position; however, argues the Comptroller, the commissioner's acting on this assumption in fixing the amount of damages unlawfully trenched upon the constitutional mandate of the Department of Civil Service, which must pass upon all such appointments, including noncompetitive summer positions such as the one sought by complainant. The latter department seeks leave to intervene with respect to that portion of the award characterized as lost earnings, and points out that the Comptroller could not lawfully authorize payment from personal service appropriations absent its certification of the payroll. As already noted, the commissioner has consented to the Comptroller's intervention though "seriously" questioning the need for intervention by the Civil Service Department.

Taking each matter in turn, we conclude initially that the commissioner's application for enforcement on behalf of complainant Geraci was timely. The last sentence of section 298 of the Executive Law requires that a "proceeding under this section when instituted by any com-

plainant, respondent or other person aggrieved" be commenced within 30 days of service of the commissioner's order. But under the language of this rather lengthy and convoluted section it is clear that this proceeding is one for judicial review and not judicial enforcement because the first sentence of the section authorizes only the commissioner to bring an enforcement proceeding.

Insofar as the issue of substantial evidence is belatedly raised by the Department of Correctional Services, which failed to take an administrative appeal or to seek judicial review, we note preliminarily that under *Matter of State Div. of Human Rights v Bystricky* (30 NY2d 322) the issue is not waived and must be resolved by this court on an enforcement application using the same degree of scrutiny that would have been exercised on an application for judicial review. (See *State Div. of Human Rights v Sears, Roebuck & Co.,* 71 AD2d 885; but see *Matter of State Div. of Human Rights v Merante,* 35 AD2d 652; *Ernsteins v State Div. of Human Rights,* 35 AD2d 599, app dsmd 28 NY2d 802; *Matter of State Div. of Human Rights v Union Carbide Corp.,* 34 AD2d 636.) The answer to the administrative complaint filed by Geraci admitted the facts pertinent to the reason for his dismissal, and merely pleaded in bar of recovery legal justification for fixing a maximum age of 37 as approved by the State Civil Service Commission. The commissioner, however, concluded that the age limit was not "reasonable" under section 54 of the Civil Service Law. Upon remission by the Human Rights Appeal Board for a redetermination of damages, the commissioner took evidence with respect to mental anguish. The complainant testified that his age at the time of his dismissal (45) had been known to his superiors, that he had resigned from a private sector position to rejoin the civil service at their urging after having been laid off from his original civil service position, and that he was the sole support of his wife and six children. We find that this testimony constituted substantial evidence supporting the award of compensation for mental anguish under the test set forth in *Batavia Lodge No. 196, Loyal Order of Moose v New York State Div. of Human Rights* (35 NY2d 143, 147) and *Ital-*

*iano v New York State Executive Dept., Div. of Human Rights* (36 AD2d 1009).

■ Presumably, however, the issue of whether the commissioner's order was "in conformity with * * * the laws of the state" (Executive Law, § 297-a, subd 7, par a) is as much before this court in this enforcement proceeding as is the issue of substantial evidence (Executive Law, § 297-a, subd 7, par d), and it is this issue that we resolve against the commissioner.

The Department of Correctional Services properly points out that while this matter was pending before the State Division of Human Rights and the Human Rights Appeal Board, the Court of Appeals ruled that there was no violation of section 54 of the Civil Service Law in imposing a maximum age limit of 32 for New York City correction officers (*Matter of Figueroa v Bronstein*, 38 NY2d 533, app dsmd 429 US 806; see *Knapp v Monroe County Civ. Serv. Comm.*, 77 AD2d 817 [age 29 limit for police officers not violative of Human Rights Law]). Since it is not disputed that complainant's age in this matter exceeded the department's age limit, and the Court of Appeals had ruled a nearly identical age limit valid, there was no lawful predicate for the commissioner's order. Indeed, the commissioner completely fails to address this point in his application or reply papers though clearly raised by the Department of Correctional Services.

A reviewing court, however, is required to apply the law as it exists at the time of its decision, absent a vesting of rights not present here (see *Kelly v Long Is. Light. Co.*, 31 NY2d 25, 29, n 3; *Hain v Hewlett Arcade*, 40 AD2d 991), and the fact that the Comptroller has paid a portion of the sum directed to be paid by the commissioner's order (lost earnings) would not constitute a waiver of the error insofar as the remainder of the order now before this court is sought to be enforced (see *Hayes v Nourse*, 107 NY 577).

Accordingly, the commissioner's application to enforce the award to complainant Geraci must be denied.

■ In the second matter we find the issues raised by the Comptroller and the Department of Civil Service to be

sufficiently important to warrant permission for their intervention with respect to the validity of the award and the propriety of enforcement.

■ Insofar as the issue of lost earnings is concerned, we disagree with the intervenors that the commissioner's order violated the rule laid down in *City of Schenectady v State Div. of Human Rights* (37 NY2d 421, 430) to the effect that the State Division of Human Rights, lacking the Civil Service Department's authority to direct appointments to the civil service, could not award back pay "dependent upon the offer of appointment". The commissioner persuasively argues that there was no reasonable probability that complainant would not have been certified for the summer position under section 100 of the Civil Service Law because hiring had been on a first-come, first-serve basis. Indeed, the Civil Service Department does not even suggest at this late date that there were any grounds for disqualifying complainant. Under these circumstances, we see no reason for remission to the commissioner for a new finding of damages (see *Sears v New York State Div. of Human Rights,* 73 AD2d 913) and we conclude that the award purportedly representing back pay less ordinary payroll deductions was legally an award for a violation of his civil rights,[2] requiring no discount from the amount of lost wages to reflect the contingency of nonappointment (see *State Div. of Human Rights v Human Rights Comm. of Syracuse & Onondaga County,* 79 AD2d 181, 184-185).

■ Insofar as the issue of mental anguish compensation is before us, we call the intervenors' attention to the fact

---

**2.** The Human Rights Law expressly authorizes two kinds of monetary relief: "back pay" as incident to appointment, reinstatement or upgrading (Executive Law, § 297, subd 4, par c, cl [ii]) and "compensatory damages" (Executive Law, § 297, subd 4, par c, cl [iii]). (See *Sears v New York State Div. of Human Rights,* 73 AD2d 913.) "Compensatory damages" would remedy personal injuries as well as breaches of employment contracts; however, it is worth noting that the distinction here is highlighted by the fact that in the Geraci matter an officer was allegedly ousted illegally from his position and mandamus might lie to reinstate him with back pay without regard to contract theory; on the other hand, in the Greebel matter, contract analysis would suggest that the complainant, as an untenured laborer, had an action to recover damages from the Parks and Recreation Commission for the repudiation of his tender of services upon accepting its first-come, first-serve offer of a summer job (cf. *Burke v Holtzmann,* 117 App Div 292, affd 196 NY 576).

that it is now well settled that an "award * * * of compensatory damages to the person aggrieved by [a discriminatory] practice" (Executive Law, § 297, subd 4, par c, cl [iii]) may include such compensation (see *Batavia Lodge No. 196, Loyal Order of Moose v New York State Div. of Human Rights,* 35 NY2d 143, *supra; State Comm. for Human Rights v Speer,* 29 NY2d 555, revg 35 AD2d 107, 113 on dissent of HOPKINS, J.; *Italiano v New York State Executive Dept., Div. of Human Rights,* 36 AD2d 1009, *supra; Matter of Chance v Frank's Beauty Salon,* 35 AD2d 304). There is also authority for including in such statutory compensation an award of interest calculated under CPLR 5001 (subd [b]) (limited by section 3-a of the General Municipal Law) for "back pay" awards to aggrieved civil servants (*City of New York v Cole,* 63 AD2d 558, 559). Also, interest is commonly considered part of the aggrieved party's damages in civil suits (see, generally, 13 NY Jur, Damages, § 130).[3]

The intervenors offer no convincing rationale for shielding the State from awards of either damages for

---

**3.** In both matters interest was preaward and calculated from an intermediate date (see CPLR 5001, subd [b]). This was consistent, apparently, with the parties' practice of viewing employment-related discrimination claims as either breach of contract or injury to property (employment position) claims under CPLR 5001 (subd [a]). The Comptroller raised the argument that, as stated in *Matter of Gordon v Board of Educ.* (52 Misc 2d 175), such interest cannot be awarded because a back-pay award incidental to reinstatement upon mandamus is neither discharge of a contractual debt nor property damages (see, also, *Morgan v Onassis,* 5 NY2d 732). This interpretation is too narrow. The petitioner in *Gordon* sought reinstatement with back pay; hence, the property (possession) interfered with here was not salary but petitioner's position, title to which was in petitioner. This analysis could be used to justify the commissioner's award in the Geraci matter of CPLR 5001 (subd [b]) interest predicated on CPLR 5001 (subd [a]) damages because the result of the alleged age discrimination was interference with his possession of his civil service position or office. But the analysis is irrelevant to the Greebel matter because complainant there was never appointed to a position. Therefore in that matter it is assumed that discrimination resulted in a breach of contract insofar as the record indicates that but for Greebel's Sabbath observance his acceptance of the State's job offer would not have been rejected. Insofar as this court concludes, however, that the complainants' causes of action are characterizable as civil rights torts for purposes of drawing upon current State budget appropriations (cf. *Board of Educ. v New York State Div. of Human Rights,* 42 AD2d 49, 54), it must be noted that under CPLR 5001 (subd [a]) no preverdict or decision interest is available in personal injury actions. The Legislature's concern in continuing in the CPLR the prohibition against interest in such actions was the speculative nature of compensation for *future* loss and damages (see Legis Studies and Reports, McKinney's Cons Laws of NY, Book 7B, CPLR 5001, pp 526-527; 5 Weinstein-Korn-Miller, NY Civ Prac, par 5001.07). Generally the trend has been

mental anguish or interest. Nor would the lack of an explicit provision in the Human Rights Law authorizing interest preclude such relief on the ground of sovereign immunity (cf. *Matter of O'Berry,* 179 NY 285; *City of New York v State of New York,* 95 Misc 2d 810, 818; but cf. *Matter of Lehigh Val. R. R. Co. v Joseph,* 281 App Div 57, 60, affd 305 NY 853; *Matter of Brophy v Prudential Ins. Co. of Amer.,* 246 App Div 871, affd 271 NY 644).

The core issue in both the matters before us, however, is whether the commissioner could entertain a money claim against the State, and whether this court could enforce the resulting money award.

■ Both the Attorney-General's opinion referred to earlier and the Fourth Department in *State Div. of Human Rights v State of New York, Dept. of Mental Hygiene, Rome Developmental Center* (85 AD2d 915) have responded in the affirmative. We do likewise, but with longer shrift commensurate with the issue.

Insofar as the commissioner's own jurisdiction is concerned, it is pertinent to refer to the Court of Appeals decision in *Matter of Board of Higher Educ. v Carter* (14 NY2d 138), which held that the Legislature did not exclude the State from the purview of the Human Rights Law. Since the definition of employers covered by the statute included the State and its agencies, there was no rational reason to excise from the commissioner's several ameliorative powers, his adjudicatory function, in order to limit the

---

to shoehorn a cause of action into whatever category would assimilate interest (e.g., *Maule v Kaufman,* 33 NY2d 58 [alimony arrears]; *De Long Corp. v Morrison-Knudsen Co.,* 14 NY2d 346 [inducing contract breach and unfair competition as property interference]; *Flamm v Noble,* 296 NY 262 [money loss due to duress]; *Dalrymple v Shults Chevrolet,* 51 AD2d 884, affd 41 NY2d 957 [negligence in failing to take out insurance on auto later wrecked]; *Sinclair v Wieder,* 48 AD2d 866 [matrimonial action]; *Spadanuta v Incorporated Vil. of Rockville Centre,* 20 AD2d 799, affd 15 NY2d 755 [General Municipal Law taxpayer's action]), so long as the Legislature's principal concern about speculative future losses was respected (e.g., *Gillespie v Great Atlantic & Pacific Tea Co.,* 26 AD2d 953, affd 21 NY2d 823). CPLR 5001 (subd [a]) also authorizes the award of interest, in the court's discretion, in actions of an equitable nature. The provision for interest under the Court of Claims Act (§ 19, subd 1) is not inconsistent with CPLR 5001 (subd [a]). Under the circumstances, we are not inclined to disturb the commissioner's computation of interest because the nature of the wrong here has not posed the problem of speculative future loss that concerned the Legislature.

State's exposure to at most an exercise of the commissioner's investigatory function (14 NY2d, at p 152). That decision, however, did not address the specific issue presented here, namely, whether the commissioner's adjudication could lawfully result in an order under section 297 (subd 4, par c) of the Executive Law requiring the State to hire, reinstate or upgrade employees with or without pay (cl [ii]) or awarding compensatory damages against the State (cl [iii]) as well as authorizing nonmonetary awards (cease and desist orders [cl (i)] and compliance reports [cl (v)]).

The Comptroller's argument is that the Legislature could not have granted the commissioner power to award such money damages against the State when jurisdiction over such money claims had been exclusively vested in the Court of Claims. The answer is that adjudication of money claims against the State has been entrusted by the Legislature to a variety of administrative agencies in full knowledge that the Court of Claims does not have a corner on the market.

As a technical matter, under the Constitution (art VI, § 7),. the Supreme Court is vested with general original jurisdiction in law and equity, and claims against the State cannot be adjudicated in that forum for the simple reason that the doctrine of sovereign immunity prevents the exercise of personal jurisdiction over the State absent its consent. The Supreme Court does, however, have subject matter jurisdiction. (See *Kagen v Kagen,* 21 NY2d 532, 538; *People ex rel. Swift v Luce,* 204 NY 478, 487; contra, *Matter of Adams v New York State Civ. Serv. Comm.,* 51 AD2d 668.) This court is but a branch of the Supreme Court, sitting *en banc* as successor to General Term (see *Waldo v Schmidt,* 200 NY 199, 202-203; *Matter of Association of Bar of City of N. Y.,* 222 App Div 580, 585). Though there may be an occasional (and apparently inadvertent) positioning of the adjective "exclusive" next to the noun "jurisdiction" when speaking of the Court of Claims (e.g., *Kagen v Kagen, supra,* p 538; but see Quirk, Albany South Mall Contractors Relief Act — An Unconstitutional Infringement Upon Court of Claims Jurisdiction, 57 Cornell L Rev

51, 57-58), in fact the constitutional provision establishing the Court of Claims jurisdiction does not infringe the Supreme Court's general jurisdiction by use of any such adjective. Instead, it merely provides (NY Const, art VI, § 9) that the Court of Claims "shall have jurisdiction to hear and determine claims against the state or by the state against the claimant or between conflicting claimants as the legislature may provide." The Legislature has provided in the Court of Claims Act (§ 9) that the court may "hear and determine" claims for breach of contract, torts and appropriation of property; it has also purported to vest exclusive jurisdiction in condemnation cases in that court under the EDPL (§ 501) (but cf. *Kagen v Kagen, supra* [Family Ct Act, § 411]).

The historical fact is that the Court of Claims has never been vested with jurisdiction over a well-defined corpus classifiable as "money claims", and a substantial number of such claims have been entrusted to the jurisdiction of other agencies of the State exercising adjudicatory functions. A significant part of that court's jurisdiction is the exercise of what used to be the Legislature's inherent power to reduce, through private bills, claims against the State to money awards, i.e., legislative fact finding and rule making of narrow application, whether denominated "adjudication", "auditing" or "assessing" (see *People ex rel. Palmer v Travis,* 223 NY 150, 157-158; *People ex rel. Swift v Luce, supra; Quayle v State of New York,* 192 NY 47; *Williamsburgh Sav. Bank v State of New York,* 243 NY 231, 240-243), but the Legislature did not transfer all such power to that court. Money claims have been entrusted to the jurisdiction of the Comptroller (State Finance Law, § 8, subd 12-a [small claims for personal or property torts], subd 15 [fee refunds]; Retirement and Social Security Law, § 11 [administration of State retirement systems; see *Matter of Croshier v Levitt,* 5 NY2d 259; *Matter of Zweck v New York State Employees' Retirement System,* 28 AD2d 1060]); the Workers' Compensation Board (Workers' Compensation Law, §§ 2, 142); the Industrial Commissioner (Labor Law, § 220, subd 8 [prevailing wages]; see *Wright v Wright Stucco,* 50 NY2d 837, revg 72 AD2d 959, 960 on dissent at App Div; see, also, *Matter of Yerry v Goodsell,* 4 AD2d 395,

401-403, affd 4 NY2d 999), and the Surrogate's Court (*Matter of Hoople,* 179 NY 308; *Matter of O'Berry,* 179 NY 285, *supra* [tax refunds]). The State Division of Human Rights is simply one more such agency.

The Comptroller's alternative argument that this court is not possessed of jurisdiction to enforce the commissioner's order appears to be based on the faulty premise that the term money claims include claims already reduced through adjudication to legal *rights* enforceable against the State despite its immunity. Indeed, the express provision in section 298 of the Executive Law for the commissioner to "obtain an order of [the] court" for the enforcement of the commissioner's orders would appear to merely restate the availability of a special proceeding in the nature of mandamus under CPLR article 78, to which the doctrine of sovereign immunity has no relevance.

In analyzing claims against the State or its agencies for money, it must always be borne in mind that the sovereign has traditionally been subject to suit with or without consent throughout the whole range of law. The original meaning of the expression, "The king can do no wrong", meant precisely the opposite of what it is commonly understood to mean today. As Maitland explains it, the origin of the notion that the sovereign's consent to suit was required came about because the king could not practicably issue or enforce his writs against himself, so his aggrieved subject would proceed by way of a petition of right. With the advent of republican government, however, there was no one to whom such a petition could be addressed but the Legislature; upon this perceived need for *legislative* consent was erected the doctrine of sovereign immunity in American law. What is often forgotten, however, is the fact that the citizen aggrieved by his republican government lost but half his remedy in the transformation; the writs of mandamus, certiorari and habeas corpus still ran against government officers, who could also be sued for damages. By their very nature, these latter remedies have never required the sovereign's consent. (See Jaffe, Suits Against Governments and Officers: Sovereign Immunity, 77 Harv L Rev 1, 1-5, 16; see, also, *Glassman v Glassman,* 309 NY 436, 440; *Chisholm v Georgia,* 2 Dallas [2 US] 419, 437-

441, 446; 3 Blackstone's Comm [original ed], pp 109-111, 254-257.)

It is thus not surprising to find that the consent of the State is likewise superfluous when injunctive relief (see *Wright v Shanahan,* 61 Hun 264, 270, *supra; Montgomery v State of New York,* 69 Misc 2d 127, 130, affd 43 AD2d 552) or declaratory relief (see *Town of Ohio v People,* 264 App Div 220, 222; *Durant v Whedon,* 201 App Div 196, *supra; Hunterfly Realty Corp. v State of New York,* 62 Misc 2d 567, 569-570; *Burnham v Bennett,* 141 Misc 514) is sought. It is also worth noting that no consent is needed when the State is a mere stakeholder (see *Glassman v Glassman,* 309 NY 436, *supra;* cf. CPLR 5207 [garnishment]).

It has long been the law of this State that mandamus to compel an officer to perform a specific duty enjoined upon him by law is not the sort of claim against which the doctrine of sovereign immunity can properly be raised by the State. (See *Wright v Shanahan,* 61 Hun 264, 270; *People ex rel. Vickerman v Contracting Bd.,* 46 Barb 254, 259.) This rule obtains in sister jurisdictions (see *County of Los Angeles v Riley,* 20 Cal 2d 652, 662; *State ex rel. Mitchell Furniture Co. v Toole,* 26 Mont 22; *State ex rel. Castillo Corp. v New Mexico State Tax Comm.,* 79 NM 357; *State, ex rel. Wilson v Preston,* 173 Ohio St 203; cf. *Pierce v Green,* 229 Iowa 22, 31-33; *Love v Filtsch,* 33 Okla 131; *State Highway Comm. v Green-Boots Constr. Co.,* 199 Okla 477) including the Federal courts (see *Marbury v Madison,* 1 Cranch [5 US] 137, 172; *Board of Liquidation v McComb,* 92 US 531, 541; *United States v Schurz,* 102 US 378, 404-405; *Pennoyer v McConnaughy,* 140 US 1, 9-10; *Vishnevsky v United States,* 581 F2d 1249, 1255-1257), and is an exception to the Eleventh Amendment's prohibition of actions against States by residents of other States (see *Rolston v Missouri Funds Comrs.,* 120 US 390, 411; *Great Northern Ins. Co. v Read,* 322 US 47, 51).

Mandamus is available in this State to secure relief on a variety of theories that could be considered claims for money against the State (e.g., *Board of Educ. v Levitt,* 42 AD2d 372 [school district interest costs]; *Matter of Wells v New York State Employees' Retirement System,* 285 App Div 51 [pension]; *People ex rel. Metropolitan Trust Co. of*

*City of N. Y. v Travis,* 191 App Div 129 [tax refund]; *People ex rel. Vickerman v Contracting Bd., supra* [bidding]; *Ex Parte Jennings,* 6 Cow 518, 526, on return *sub nom. People ex rel. Jennings v Seymour,* 6 Cow 579 [canal claims]). The ancient writ was intended to maintain its vitality by the revisers of the civil procedure acts including the CPLR. (See *Matter of Gimprich v Board of Educ.,* 306 NY 401, 406; *Matter of Newbrand v City of Yonkers,* 285 NY 164, 174-175; 8 Weinstein-Korn-Miller, NY Civ Prac, par 7801.04; NY Advisory Committee on Prac and Pro [2d prelim report], p 395; but see *Matter of Brescia v Mugridge,* 52 Misc 2d 859, 862, affd 29 AD2d 632; *Matter of Barone v Adams,* 39 Misc 2d 227, 232, revd on other grounds 20 AD2d 790.)

Central to the distinction between a claim remediable in mandamus and one remediable in the Court of Claims is the notion that the liability of the State for the particular claim has already been established by law; to this extent, the term "claim" is imprecise. (See *M.L. Improvement Corp. v State of New York,* 204 App Div 733, 735-736; *People ex rel. Yates v Canal Bd. of State of N. Y.,* 13 Barb 432, 440-441.) For this reason mandamus cannot lie against an officer, public body or corporation until the claimant's primary right and the respondent's duty can be said to have already been fixed as a matter of law. (See *People ex rel. Garbutt v Rochester & State Line R.R. Co.,* 76 NY 294; *Dolan v Mayor, Aldermen & Commonalty of City of N. Y.,* 68 NY 274; *People ex rel. Brown v Board of Apportionment & Audit,* 52 NY 224; *McCullough v Mayor of Brooklyn,* 23 Wend 458; *Matter of Dunhill Mfg. & Dist. Corp. v State Park Comm. for City of N. Y.,* 42 AD2d 442, affd on opn at App Div 35 NY2d 657; *Matter of Buffalo Dump Truck Owners Assn. v Condon,* 232 App Div 273; *Durant v Whedon,* 201 App Div 196; *Matter of Morris & Cumings Dredging Co.,* 116 App Div 257; *People ex rel. Dunn v Metz,* 115 App Div 269, 274; *Matter of Dental Soc. of State of N. Y. v Jacobs,* 103 App Div 86; *People ex rel. Gross v Fitch,* 14 App Div 630; *People ex rel. Hoffman v Rupp,* 90 Hun 145, 148.)

As a legal remedy controlled by equitable principles (see *Matter of Geller v Veteran,* 49 AD2d 574, app dsmd 38 NY2d 1003), mandamus is essentially a judicial command

to perform a ministerial act specifically required of a public or corporate officer or body *by law* (see *Matter of Burdick v Hall,* 232 App Div 387) in one of two senses: (1) a common-law, statutory or other rule of *general application* so enjoining the officer or board as invoked by a petitioner coming within its express terms (see *People ex rel. Coffey v Democratic Gen. Committee of Kings County,* 164 NY 335; *Matter of Smith v Dillon,* 267 App Div 39; *People ex rel. Metropolitan Trust Co. v Travis,* 191 App Div 129; *Matter of Pfingst v Levitt,* 44 AD2d 157, mot for lv to app den 34 NY2d 518; *Henderson v Sarle,* 23 Misc 2d 334; *Matter of Battipaglia v Executive Committee of Democratic County Committee of County of Queens,* 20 Misc 2d 226); or (2) a rule of *limited application* laid down in the form of a legislative,[4] judicial,[5] or administrative[6] determination or a corporate charter[7] or

---

**4.** The Legislature's power to pass "private bills", however, has long since passed into history — and partially into the Court of Claims (see NY Const, art III, § 19; *Williamsburgh Sav. Bank v State of New York,* 243 NY 231, 240-241; *People ex rel. Swift v Luce,* 204 NY 478; *Quayle v State of New York,* 192 NY 47; *Board of Supervisors of County of Cayuga v State of New York,* 153 NY 279, 288; *People ex rel. Sage v Schuyler,* 79 NY 189, 201).

**5.** Compare Court of Claims Act (§ 20, subd 5) with CPLR 5207 and Court of Claims Act (§ 20, subd 3); see *People ex rel. Palmer v Travis,* 223 NY 150; *Matter of Shepard,* 225 App Div 782; *Matter of Wolfies Rest. v DeSapio,* 2 Misc 2d 623, 624; *Matter of Victor J. Georgetti, Inc. v City of Long Beach,* 58 Misc 2d 275; 5 Weinstein-Korn-Miller, NY Civ Prac, par 5203.13; Siegel, New York Prac, § 558).

**6.** See Civil Service Law, §§ 75, 77: Education Law, § 3020-a; US Code, tit 5, § 702; *Marbury v Madison,* 1 Cranch [5 US] 137; *United States v Schurz,* 102 US 378, 404-405; *People ex rel. Brown v Board of Apportionment & Audit,* 52 NY 224; *Matter of Hart v Perkins,* 258 NY 61, 65; *People ex rel. Linton v Brooklyn Hgts. R. R. Co.,* 172 NY 90; *Matter of Hardenbrook v Combs,* 160 Misc 546; *Matter of Coogan,* 27 Misc 563, 567-568; 34 Am Jur, Mandamus, § 103; cf. *Federal Trade Comm. v Fairyfoot Prods. Co.,* 94 F2d 844, 845-846.

**7.** The general rule is that private corporations (as distinguished from public corporations or other governmental entities) can be compelled to perform a ministerial duty or to act reasonably in the exercise of discretion only if the duty to act is specifically and plainly imposed by law rather than by contract (see *People v New York, Lake Erie & Western R. R. Co.,* 104 NY 58, 67). The distinction has been as difficult to preserve over the years as it has been to perceive in any given case (e.g., *People ex rel. Dilcher v German United Evangelical St. Stephen's Church of Buffalo,* 53 NY 103).

A straightforward application of mandamus is coercing management compliance with corporators' rights in corporate governance, such as meeting and voting rights (see *Matter of Auer v Dressel,* 306 NY 427; *People ex rel. Miller v Cummings,* 72 NY 433, 437; *Matter of Allied Fruit & Extract Co.,* 243 App Div 52; *Matter of Young v Jebbett,* 213 App Div 774; *People ex rel. Griffin v Steele,* 2 Barb 397, 416-419), and the right to inspect corporate books and records (see *Matter of Durr v Paragon Trading Corp.,* 270 NY 464; *Matter of Tuttle v Iron Nat. Bank of Plattsburgh,* 170 NY 9; *Matter of Steinway,* 159 NY 250; *Matter of Hausner v Hopewell Prods.,* 10 AD2d 876; *Matter of Workmen's Benefit Fund of U.S.A. [Michel],* 265 App Div 176; *Matter of Newman v Smith,* 263 App Div 85, affd 289 NY 545; *Matter of Lenc v Zicha,* 223 App Div 158, affd 250 NY 541; *People ex rel. Keeseville, Ausable Chasm & Lake Champlain R.R. Co. v Powers,* 145 App Div 693;

*Pino v United Democratic Regular Organization of 16th Assembly Dist., Kings County,* 195 NYS2d 860).

Mandamus also lies to enforce membership rights arising from corporate rather than contractual association status (see *Matter of Phalen v Theatrical Protective Union No. 1.,* 22 NY2d 34, cert den 393 US 1000; *Polin v Kaplan,* 257 NY 277; *People ex rel. Solomon v Brotherhood of Painters, Decorators & Paperhangers of Amer.,* 218 NY 115; *People ex rel. Schults v Love,* 199 App Div 815; *Matter of Weidenfeld v Keppler,* 84 App Div 235, affd on opn at App Div 176 NY 562; but see, *Hutchinson v Lawrence,* 67 How Prac 38, 53-55). It is also an appropriate remedy for the enforcement of statutory rights of unincorporated membership organizations (see *Matter of Battipaglia v Executive Committee of Democratic County Committee of County of Queens,* 20 Misc 2d 226, 227-229; *Henderson v Sarle,* 23 Misc 2d 334). Mandamus is appropriate even if a corporate membership right is not strictly grounded in a specific provision of a statute or the corporate charter (see *Wilcox v Supreme Council of Royal Arcanum,* 210 NY 370, 376-377 [due process]; *People ex rel. Johnson v New York Produce Exch.,* 149 NY 401 [corporate by-law]; *Matter of Haebler v New York Produce Exch.,* 149 NY 414 [corporate by-law]; *People ex rel. Deverell v Musical Mut. Protective Union,* 118 NY 101 [corporate by-law]; *People ex rel. Bartlett v Medical Soc. of Erie County,* 32 NY 187 [professional association rules]; *Matter of Gerseta Corp. v Silk Assn. of Amer.,* 220 App Div 293, 295-296 [trade association rule, custom or by-law]; *Matter of Barry v The Players,* 147 App Div 704, affd 204 NY 669 [incorporated club's constitution]; *People ex rel. Doyle v New York Benevolent Soc. of Operative Masons,* 3 Hun 361, 365 [due process]; *People ex rel. Gray v Medical Soc. of County of Erie,* 24 Barb 570, 574-576 [corporate by-law]; *People ex rel. Schmitt v Saint Franciscus Benevolent Soc.,* 24 How Prac 216, 221-222 [due process]).

The well-established though difficult distinction between legal and contractual duties enforceable in mandamus has eroded in recent years in cases involving disciplined students and teachers in private educational institutions. Since student and teacher relationships with such private organizations are basically contractual (tuition in exchange for instruction or wages in exchange for services), mandamus would not lie (see *People ex rel. Kelsey v New York Post-Graduate Med. School & Hosp.,* 29 App Div 244, 250-252; *People ex rel. Barnet v College of Physicians & Surgeons,* 7 How Prac 290). Yet just as the courts took upon themselves the powers of visitation of business and membership corporations (see *Wilcox v Supreme Council of Royal Arcanum, supra*), such powers were vested in the Regents of the University of the State of New York over private as well as public educational institutions, and the duties imposed upon those institutions in the exercise of those powers by the Regents may be enforceable in mandamus (see Education Law, §§ 207, 215, 224-a, 226, 305; 8 NYCRR 19.1, 51.3, 52.2, 52.6, 53.3; *Matter of Patti Ann H. v New York Med. Coll.,* 88 AD2d 296; *People ex rel. O'Sullivan v New York Law School,* 68 Hun 118; cf. *Goldstein v New York Univ.,* 76 App Div 80, 82-83; see, also, *People ex rel. Jones v New York Homeopathic Med. Coll. & Hosp.,* 20 NYS 379). Recent decisions have not fully addressed the propriety of proceeding in mandamus under CPLR article 78 instead of in an action at law or in equity when rights of an apparently contractual nature have been pursued by students (see *Mewshaw v Brooklyn Law School,* 53 AD2d 604; *Abrams v New School for Social Research,* 50 AD2d 778, affd 40 NY2d 961; *Matter of Carr v St. John's Univ.,* 17 AD2d 632, affd 12 NY2d 802; *People ex rel. Cecil v Bellevue Hosp. Med. Coll. of City of N. Y.,* 60 Hun 107, 109, affd 128 NY 621; *Balogun v Cornell Univ.,* 70 Misc 2d 474; *Mitchell v Long Is. Univ.,* 62 Misc 2d 733; *Matter of Edde v Columbia Univ. in City of N. Y.,* 8 Misc 2d 795, affd 6 AD2d 780, cert den 359 US 956; *Anthony v Syracuse Univ.,* 130 Misc 249, 253-255, revd on other grounds 224 App Div 487) or by teachers (*Matter of Yaakob v Schwartz Coll. of Pharmacy & Health Sciences of Long Is. Univ.,* 77 AD2d 884, affd for reasons stated in mem at App Div 53 NY2d 959; *Matter of Madon v Long Is. Univ.,* 70 AD2d 913). Nevertheless, there is evidence of a modern trend in which specific performance in the nature of mandamus controlling ministerial or arbitrary and capricious decisions of private educational institutions (see CPLR 7803, subd 3; 1 Clark, New York Law of Damages, § 363; Fry, Specific Performance of Contracts [5th ed], §§ 11, 12; *Matter of Public Serv. Comm. v Interborough Rapid Tr. Co.,* 172 App Div 324, 330, affd 219 NY 355), in apparent substitution for damages or specific performance under ordinary contract principles, may be afforded to both students (see *Tedeschi v Wagner Coll.,* 49 NY2d 652, 658-660;

contract with a public dimension[8] fixing petitioner's right to such performance.

*Morales v New York Univ.*, 83 AD2d 811; *Shields v School of Law of Hofstra Univ.*, 77 AD2d 867; *People ex rel. Goldenkoff v Albany Law School*, 198 App Div 460; *Matter of Kwiatkowski v Ithaca Coll.*, 82 Misc 2d 43; *Matter of Ryan v Hofstra Univ.*, 67 Misc 2d 651; but see *Matter of Bonwitt v Albany Med. Center School of Nursing*, 77 Misc 2d 269) and teachers (see *Matter of Gray v Canisius Coll. of Buffalo*, 76 AD2d 30, 35-36; *Matter of Barone v Adams*, 39 Misc 2d 227, 231-232, revd on other grounds 20 AD2d 790; but see *Cuppy v Ward*, 227 NY 603; *Bleendes v Fellerman*, 264 App Div 223; *Miller v Warner*, 42 App Div 208 [no specific performance of employment contracts]). Indeed, the substantive transformation of private relationships lightly regulated by the Regents and otherwise governed only by freely drawn contract provisions of narrow scope into quasi-public relationships subject in all aspects to judicial oversight under the arbitrary and capricious test and other review standards of CPLR article 78 — a procedural article — would appear to be a latter day illustration of what Maitland had thought was an historical curiosity: " 'So great is the ascendancy of the Law of Actions in the infancy of Courts of Justice, that substantive law has at first the look of being gradually secreted in the interstices of procedure.' " (Maitland, The Forms of Action at Common Law, lecture i, p 1.)

**8.** By definition government contracts have a public dimension because of the public status of the government party, and because of the contracts' being an exercise of sovereign power albeit narrowly applied in the form of a set of rules governing the relations of the parties to the contracts. In a sense, the government can be said to have bound itself (and its officers) by contract in the same way it binds itself by statute or judicial decision; therefore, once a party has come within the terms of a contract's provisions for government action upon that party's performance of his contract obligations, mandamus ought to lie to compel such government action. This conclusion will not bear analysis. Though the State acts not as a sovereign but as a corporate entity when it enters into a contract (see *City of Indianapolis v Indianapolis Water Co.*, 185 Ind 277), claims against it arising out of such contract cannot be enforced except in the Court of Claims because of the doctrine of sovereign immunity (see *Bridge's Sons v State of New York*, 188 App Div 500, 501, affd 231 NY 532). Therefore, it is not technically accurate to say that mandamus lies to enforce the contract rights. Instead, the availability of mandamus to enforce what appear to be contract rights is based in this State upon one of two theories: A vesting of legal — hence not merely contractual — right by some official act of *accepting* the petitioner's performance of his obligations under the contract, or a vesting of right not in the nature of contract but in the nature of status or statutory grant.

With respect to the first theory, the private party contracting with the State or local government must study the pertinent statutes and local ordinances, by-laws and regulations to ascertain the amenability of the government party to an action at law and the existence of any administrative or quasi-judicial auditing machinery that could resolve contract claims within the government entity — subject to review in a proceeding in mandamus or certiorari (now provided in CPLR article 78). (See *Matter of Wilaka Constr. Co. v McAneny*, 265 NY 43; *People ex rel. Desiderio v Conolly*, 238 NY 326; *O'Neil v State of New York*, 223 NY 40; *New York Catholic Protectory v Rockland County*, 212 NY 311; *Quayle v State of New York*, 192 NY 47; *People ex rel. Dady v Coler*, 171 NY 373; *People ex rel. Thurston v Board of Town Auditors of Town of Elmira*, 82 NY 80; *People ex rel. Ryan v Green*, 58 NY 295; *Huff v Knapp*, 5 NY 65; *Matter of Rapid Tr. Subway Constr. Co. v Craig*, 199 App Div 45; *Commonwealth Water Co. v Village of Castleton*, 192 App Div 697; *Bragg v Town of Victor*, 84 App Div 83; *People ex rel. Rice v Board of Auditors of Town of Hannibal*, 65 Hun 414; *Pagel, Horton & Co. v Joseph*, 61 NYS2d 311.) An article 78 proceeding in the nature of mandamus can be used to compel payment of an audited sum, directing performance of a ministerial act such as signing a warrant; furthermore, in some circumstances, it can compel acts preliminary to payment, such as the audit itself, which would then be subject to further article 78 proceedings to review the result (see *People ex rel. McCabe v Matthies*, 179 NY 242), although such review would use an arbitrariness test rather than a contract or equity

To accept the Comptroller's characterization of the commissioner's order as a mere money claim on which the State is not yet liable would undermine the very concept of administrative adjudication — including adjudications made by the Comptroller. Nor would it make any sense to require a victorious complainant to submit the commissioner's order to the Court of Claims rather than this court, which has "exclusive" jurisdiction under section 298 of the Executive Law of proceedings to review such administrative orders. Finally, the availability of the Court of Claims for enforcement of a commissioner's order would not constitute an adequate alternative legal remedy sufficient to

---

analysis (cf. *Matter of T.P.K. Constr. Corp. v O'Shea,* 69 AD2d 316, affd 50 NY2d 835). These special circumstances include completed performance of all or a portion of the private contractor's obligations, a valid express contract, and official acceptance of such performance by the appropriate agent of the government entity (see *People ex rel. Graves v Sohmer,* 207 NY 450; *Quayle v State of New York, supra; Matter of Freel,* 148 NY 165; *Matter of Fehlhaber Corp. v O'Hara,* 53 AD2d 746; *Matter of Buffalo Dump Truck Owners Assn. v Condon,* 232 App Div 273; *Durant v Whedon,* 201 App Div 196, 200-202; *Matter of Morris & Cumings Dredging Co.,* 116 App Div 257; *People ex rel. Dunn v Metz,* 115 App Div 269; *People ex rel. Gross v Fitch,* 14 App Div 630) or such sufficient inaction as to be deemed acceptance (compare *Matter of Bay Ridge Diagnostic & Analytical Lab. v Smith,* 71 AD2d 889, and *People ex rel. Beck v Coler,* 34 App Div 167, with *Marsh v Town of Little Val.,* 64 NY 112, and *Pagel, Horton & Co. v Joseph, supra).* Furthermore, just as courts other than the Court of Claims have jurisdiction of CPLR article 78 proceedings to review administrative adjudications of contract claims, these courts have jurisdiction of CPLR article 75 proceedings to review and enforce contractual arbitration awards (see CPLR 7501; *Farino v State of New York,* 55 AD2d 843).

With respect to the second theory, New York is heir to ancient common-law principles that analyze public employment cases, including salary claims, as matters of property rather than contract law: An officer holds title to his office, and a tenured employee holds title to his position; therefore removal or dismissal in violation of law is analyzed in terms of ouster rather than defeasance of title or breach of contract, thus permitting recourse to proceedings under what is now CPLR article 78 to obtain reinstatement to the office or position and all its emoluments (see *Nichols v MacLean,* 101 NY 526, 533-534; 3 Kent, Commentaries, p 454; compare *Steinson v Board of Educ.,* 165 NY 431, and *O'Hara v City of New York,* 46 App Div 518, affd on opn at App Div 167 NY 567, with *State ex rel. Shanks v Common Council of City of Washington,* 212 Ind 38). The usual rules of ordinary employment contract law apply to nontenured personnel such as probationary employees (see *Matter of Sehulster v Carney,* 196 Misc 356, affd 276 App Div 592; *Matter of Rindone v Marsh,* 183 Misc 10). Thus in the absence of some express provision of law imposing a nondiscretionary duty on an officer or board in relation to an employment contract (see, e.g., *Yris v Comsewogue Union Free School Dist. No. 3, Port Jefferson Sta.,* 63 AD2d 648, affd 55 NY2d 840 [statutory schedule of teacher salaries]), public servants seeking either reinstatement plus emoluments made incident thereto (e.g., salaries) by law or contract, or merely those emoluments assimilated thereto by law (but not merely by contract) after reinstatement, may use mandamus if they can be classified as tenured employees or officers under this theory, which is now essentially codified in sections 75 and 77 of the Civil Service Law and section 3020-a of the Education Law. (See *Matter of Mullane v McKenzie,* 269 NY 369; *Matter of Deth v Castimore,* 245 App Div 156; *Matter of Sehulster v Carney, supra; Matter of Rindone v Marsh, supra; People ex rel. Blair v Grout,* 44 Misc 526.)

deny mandamus at common law,[9] even without considering the express direction to this court in section 298 for its use.

■ Of course, under this analysis the Comptroller's argument that he should have been joined as a party to the administrative proceedings before the commissioner is clearly incorrect. The claims involved have been liquidated and the State's liability fixed by the very administrative machinery set in place by the Legislature for such purpose. The Comptroller's role as auditor under the State Constitution (art V, § 1) and State Finance Law (§ 109, subd 4) would therefore be purely ministerial. (See *People ex rel. Desiderio v Conolly,* 238 NY 326, 332-334; *People ex rel. Sage v Schuyler,* 79 NY 189, 201; *People ex rel. Heinrich v Travis,* 175 App Div 721, 726; but cf. *Matter of Civil Serv. Employees Assn. v Bartlett,* 51 AD2d 100.)

Yet the Comptroller correctly points out that he cannot be compelled to pay the sum as directed by the commissioner's order, as enforced by this court, without an appropriation of money from the Legislature on which to draw.

---

**9.** Mandamus does not issue if there is an adequate legal (as distinguished from equitable) remedy such as an action at law (*People ex rel. Frost v New York Cent. & Hudson Riv. R.R. Co.,* 168 NY 187; *People ex rel. Moulton v Mayor, etc. of NY,* 10 Wend 395). An injunction will not issue if full relief is available in mandamus (see *Kane v Walsh,* 295 NY 198; *Matter of Reynolds,* 202 NY 430; *Southern Leasing Co. v Ludwig,* 217 NY 100). Like an affirmative injunction, mandamus compels specific performance (see *Board of Liquidation v McComb,* 92 US 531, 541; *Kendall v United States,* 12 Pet [37 US] 524, 614; *People v Supervisors of County of Columbia,* 10 Wend 363, 366; *Matter of Trustees of Vil. of Williamsburgh,* 1 Barb 34, 35; 38 CJ, Mandamus, § 32, p 561). The uncertainty inherent in securing full relief in actions at law permits the aggrieved party to make an election of remedy — mandamus or action (see *Toscano v McGoldrick,* 300 NY 156; *McGraw v Gresser,* 226 NY 57; *People ex rel. Fiedler v Mead,* 24 NY 114, 121-123; *Huff v Knapp,* 5 NY 65, 67-68; *Matter of Adams v New York State Civ. Serv. Comm.,* 51 AD2d 668, 669; *Forino v City of Troy,* 42 AD2d 647; see, also, *Thoma v City of New York,* 263 NY 402; *Sayre v State of New York,* 128 NY 622; *People ex rel. Ryan v Green,* 58 NY 295, *supra; Matter of Trustees of Vil. of Williamsburgh, supra,* p 35; *McLaughlin v New York City Employees Retirement System,* 90 Misc 2d 509). Only mandamus, however, is available if the board or officers to whom it is directed serve the public directly rather than as agents for a municipal corporation (see *Toscano v McGoldrick,* 300 NY 156, 161-162, *supra*). Only mandamus can establish a right to possession of an office or position, the title of which is held by the petitioner; unless such right be established, by mandamus, other adjudication or stipulation, recovery of back pay is barred (see *Austin v Board of Higher Educ.,* 5 NY2d 430; *Hagan v City of Brooklyn,* 126 NY 643; *Smith v Helbraun,* 24 AD2d 518; *Matter of Bush v Beckmann,* 283 App Div 1070; *Manko v City of Buffalo,* 271 App Div 286, affd 296 NY 905; *Hilton v Cram,* 112 App Div 35, affd 190 NY 535; *Burgos v State of New York,* 40 Misc 2d 971). There may be a question whether an election between mandamus and an action at law for damages is available if the term of office or position has expired (cf. *Matter of Burke v Bowen,* 40 NY2d 264; but see *Matter of Pfingst v Levitt,* 44 AD2d 157, mot for lv to app den 34 NY2d 518; *Matter of White v Harrell,* 239 App Div 604; *People ex rel. Collins v McAneny,* 144 NYS 121).

Mandamus is available to compel the making of appropriations by bodies inferior to the State Legislature, but it cannot coerce appropriations from the latter (NY Const, art VII, § 7; *People ex rel. O'Loughlin v Prendergast,* 219 NY 377; *People ex rel. Dannat v Comptroller of City of N. Y.,* 77 NY 45; *Matter of Victor J. Georgetti, Inc. v City of Long Beach,* 58 Misc 2d 275). Were there in fact no appropriations to cover all or part of the commissioner's orders, the commissioner (or complainant) could presumably submit the orders judicially reviewed by this court to the Court of Claims for entry in ministerial fashion of a judgment against the State that would be satisfied from the perennial appropriations for such judgments (see *O'Neil v State of New York,* 223 NY 40, 44; *Ball v State of New York,* 52 AD2d 47). Though the Court of Claims lacks the enforcement powers of this court (see *Matter of Silverman v Comptroller of State of N. Y.,* 40 AD2d 225; *Safeco Ins. Co. of Amer. v State of New York,* 89 Misc 2d 864, 866; contra, *Wilson v State of New York,* 73 Misc 2d 931; see *Montgomery v State of New York,* 69 Misc 2d 127, 130, affd 43 AD2d 552, *supra*), enforcement of the commissioner's order as thus reduced to a Court of Claims judgment covered by an appropriation could be had in the Supreme Court (see *People ex rel. Palmer v Travis,* 223 NY 150, *supra*).

All of this could be avoided if there were an appropriation for orders of the commissioner as there is for the Court of Claims; however, the arguments of the commissioner indicate that until recently the Comptroller's practice was to draw on personal service appropriations to cover backpay orders. The Comptroller does in fact appear to have a certain degree of discretion under the State Finance Law (§ 52) in defining the various sorts of expenses to be met by appropriations; however, the award of damages representing lost earnings for nonappointment in the Greebel matter would not appear to fall within the personal service category because, as the Civil Service Department pointed out, the practice is for the department to certify the payroll before the Comptroller will act on it. Since the Civil Service Department never in fact exercised its constitutional prerogative (*City of Schenectady v State Div. of Human Rights,* 37 NY2d 421, *supra*), in certifying Greebel,

the award can only be upheld as compensatory damages under the statute (Executive Law, § 297, subd 4, par c, cl [iii]) rather than as back pay upon hiring, reinstatement or upgrading (Executive Law, § 297, subd 4, par c, cl [ii]) (see n 2, *supra*). Furthermore, the Comptroller has already voiced his opinion as auditor that interest and damages for mental anguish would not be covered by the personal service appropriations.

A review of the 1982 State budget, however, discloses that the Legislature has made enough of an appropriation ($11,000) to cover damages adjudicated in the small claims audit provided by the State Finance Law (§ 8, subd 12-a) (L 1982, ch 50, Sen Print 7670, p 315 [Budget, State Purposes, Reg Misc, All State Depts and Agencies, Special Departmental Charges]). Subdivision 12-a authorizes the Comptroller to entertain, outside of the Court of Claims Act, demands for damages not exceeding $5,000 for "injuries to personal property, real property, or for personal injuries caused by the tort of an officer or employee". Among the personal injuries defined as such by the General Construction Law (§ 37-a) are libel and slander, and that provision has also been construed to include violations of the Civil Rights Law (see *Riddle v MacFadden,* 201 NY 215 [invasion of privacy]). It is significant to note that the civil rights violation committed by the State in the Greebel matter — religious discrimination — is similar to libel and slander not only in the mental suffering of the victim but also in the economic consequences (e.g., lost income or business) (see *Broderick v News Syndicate Co.,* 243 NY 546; *Sanderson v Caldwell,* 45 NY 398; *Tower v Crosby,* 214 App Div 392; *Edwards X-Ray Co. v Ritter Dental Mfg. Co.,* 124 Misc 898). We suggest, therefore, that the entire award of damages in lieu of back wages, plus interest and compensation for mental anguish, are payable from the 1982 appropriation.

We note that the requirement in subdivision 12-a of section 8 of the State Finance Law respecting the Parks and Recreation Commission's submission to the Comptroller of its request for payment of the sum directed to be paid by the commissioner's order could be deemed met by the proceedings before the commissioner, and the second re-

quirement of approval by the Attorney-General could also be deemed met by the position expressed in his opinion issued in the Geraci matter.

Accordingly, the application for enforcement in the Geraci matter is denied for lack of a basis in law supporting the award, and that part of the motion by the Comptroller and the Civil Service Department to vacate this court's enforcement order in the Greebel matter is denied because there is no jurisdictional infirmity or practical difficulty in obeying that order.

DAMIANI, J. P., TITONE, LAZER and GIBBONS, JJ., concur.

Proceeding by the State Division of Human Rights pursuant to section 298 of the Executive Law, *inter alia,* to enforce its determination dated June 28, 1978, on behalf of claimant Santo Geraci, and motion by the New York State Department of Audit and Control and the New York State Department of Civil Service to intervene and vacate an order of this court dated December 1, 1980 granting enforcement of an order of the Commissioner of Human Rights dated April 25, 1980.

Application denied, without costs or disbursements, and motion granted only to the extent that intervention is sought and otherwise denied.